[Crim. No. 655.   First Appellate District.—March 15, 1917.]

## THE PEOPLE, Respondent, v. FRANK SEARLE, Appellant.

CRIMINAL LAW — MURDER — VERDICT OF MANSLAUGHTER — ACCIDENTAL DISCHARGE OF GUN.—In a prosecution for murder, a verdict of manslaughter is sufficiently supported by the admissions of the defendant, that at about the time the deceased was wounded a loaded rifle which the defendant was handling was accidentally discharged, and that while on his way for the doctor he went to his cabin, took the rifle and hid it where it was subsequently, and prior to his confession, found by an officer.

ID.—CORPUS DELICTI—SUFFICIENCY OF EVIDENCE.—In such a prosecution the *corpus delicti* is sufficiently proven, independently of the extrajudicial statements of the deceased, by evidence that deceased shortly after a shot was fired was found mortally wounded by a bullet, under circumstances that excluded any inference that the wound was self-inflicted.

ID.—PROOF OF KILLING—PRESUMPTION OF MALICE.—In view of the fact that every killing is unlawful unless expressly excused or justified by law, where a homicide is shown, it is incumbent upon the defendant to prove circumstances in mitigation, excuse, or justification, unless they arise out of the evidence produced against him.

ID.—VIEW OF SCENE OF CRIME BY JURY—PRESENCE OF DEFENDANT—WAIVER.—While a defendant has the right to be present when the scene of the crime is being visited by the jury, he may waive such right, and such a waiver is shown where it is expressly stipulated by counsel that no one need accompany the jury except the sheriff.

APPEAL from a judgment of the Superior Court of Contra Costa County, and from an order denying a new trial. A. B. McKenzie, Judge.

The facts are stated in the opinion of the court.

A. B. Tinning, and T. H. De Lap, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

KERRIGAN, J.—The defendant was charged in an information by the district attorney of the county of Contra Costa with the crime of murder. He was tried, convicted of manslaughter, and sentenced to imprisonment in the state prison at San Quentin for a term of eight years. The present appeal is from the judgment and from an order denying defendant's motion for a new trial.

Appellant presents but three grounds of appeal, viz., insufficiency of the evidence to support the verdict; that the *corpus delicti* was not proved independently of the extrajudicial admissions of the defendant, and that the view by the jury of the scene of the crime in the absence of the defendant was a violation of his constitutional right.

Dealing with the first point urged, the defendant is alleged to have shot one Patrick Conroy on June 4, 1916. The testimony shows that the deceased was found that afternoon

about 5 o'clock mortally wounded on a ranch in the county mentioned. He and one Joe Hickey, two itinerant laborers, were friends and companions, and had been such for a period of eight years. On the afternoon of said June 4th, walking along the railroad track in the vicinity they came to a small shed on a ranch belonging to one I. T. Coe, which they selected as their resting place for the night. They unrolled their blankets, and Conroy went to get some water at a pump about four hundred feet away from the shed. About five minutes thereafter Hickey heard a shot. He paid little attention to it, but a few minutes later, Conroy not having returned, he proceeded to the pump to look for him, and there found Conroy prone upon the ground with a bullet wound in his head. He immediately ran to the county road close by to summon help, and there met Coe and the defendant. First aid was given to Conroy, and the defendant was sent by Coe, by whom he was employed, to a town a mile away for medical aid. The defendant was a stranger in the county, and at this time had been employed by Coe for about two weeks only. He slept in a cabin some two hundred feet from the pump near which the body of the deceased was found. About a week before the shooting Coe had loaned the defendant a loaded Winchester rifle. About half an hour before Conroy was shot the defendant had left Coe, with whom he had been working repairing a fence, to do the evening chores. Later he returned. During his absence Coe heard the report of a gun, and it was a few minutes after defendant's return to where Coe was still working on the fence that Hickey arrived with the news that his "partner" had been shot. Shortly after the defendant had been dispatched for a doctor, Hickey, who was assisting Coe in his ministrations to the wounded man, caught a glimpse of a man going around the cabin occupied by the defendant. Early the next morning Conroy died. When Hickey announced that his companion had been shot, the defendant (who, it appears, had taken that day several drinks of intoxicating liquor) volunteered the statement that some men or boys had been shooting rabbits in the neighborhood, and that he had heard several gunshots that afternoon—seeking perhaps to convey the inference that Conroy had been shot through the carelessness of hunters. Suspicion attached to the defendant, and he was put under arrest that night. At first he stoutly denied that he had discharged any

gun, or that he had hidden a gun, or even that Coe had loaned him one. Later, however he admitted that a loaded rifle had been borrowed by him from Coe; that at about the time the deceased was wounded while handling the rifle it was accidentally discharged; that while on his way for the doctor he went to his cabin, took the rifle and hid it where it was subsequently, and prior to his confession, found by an officer. The defendant offered himself as a witness at the trial, and in the course of his testimony said, "Of course, I could not tell whether I shot him or not."

The evidence is sufficient to warrant the jury in finding that the defendant killed the deceased. It does not, however, show that the killing was intentional, but it does sustain the view, which doubtless was adopted by the jury, that the homicide resulted from failure on his part to exercise due care and circumspection in discharging the fatal shot; that his conduct amounted to criminal negligence, rendering him guilty of manslaughter.

Section 192 of the Penal Code declares: "Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds: . . . . 2. Involuntary . . . in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection."

"An unintentional homicide committed through the negligent handling of a firearm in a way indicating a reckless disregard of life is manslaughter. It is negligence to point a firearm at another without examining to see whether or not it is loaded, or to handle or use it in a place where a discharge is likely to injure another, as in a highway." (1 Michie on Homicide, p. 253.)

So, where parties were playing or skylarking and defendant recklessly handled his gun. (*Murphy* v. *Commonwealth* (Ky.), 22 S. W. 649; *Henderson* v. *State*, 98 Ala. 35, [13 South. 146].) In the first-mentioned case the fact that the shot was caused by defendant's finger accidentally slipping on the trigger was held to be an insufficient excuse.

Equally without merit is the defendant's claim that the *corpus delicti* was not proven independently of the extrajudicial statements of the defendant. The deceased shortly after a shot was fired was found mortally wounded by a bullet under circumstances that exclude any inference that the wound was self-inflicted. We have therefore direct evi-

dence of death, and cogent and irresistible evidence of violence independent of the evidence of the defendant. Here, as in the case of *People* v. *Carlson,* 8 Cal. App. 730, 732, [97 Pac. 827], there was ample evidence tending to show that a crime had been committed by someone, and therefore the admissions and confessions of defendant made voluntarily were properly received in evidence. Every killing is unlawful unless expressly excused or justified by law. The homicide being shown to have been committed by defendant it is incumbent upon him to prove circumstances in mitigation, excuse, or justification unless they arise out of the evidence produced against him. The mere fact of the killing having been proved to have been done by the defendant, and nothing further, the presumption of law is that it was malicious and an act of murder. (*People* v. *Knapp,* 71 Cal. 1, [11 Pac. 793] ; *People* v. *Bush,* 71 Cal. 602, [12 Pac. 781] ; *People* v. *March,* 6 Cal. 543 ; *People* v. *Roberts,* 6 Cal. 214.)

Coming now finally to the point that it was prejudicial error to allow the jury, in the absence of the defendant, to view the scene of the alleged crime, we have no doubt that the defendant had a right to be present when the premises were being visited by the jury, but it is settled that he may waive this right (*People* v. *White,* 20 Cal. App. 156, [128 Pac. 417]), and in this case it was expressly stipulated by counsel that no one need accompany the jury except the sheriff.

The judgment and order are affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 10, 1917.