KAUFMAN, P. J.
 

 The defendant, Elmer Dugger, was convicted, after trial by jury, of second degree murder of James Pruitt. On this appeal from the judgment of conviction and the order denying his motion for a new trial, he argues that: (1) The evidence is not sufficient to support a conviction of murder in the second degree and as a matter of law, requires reduction of the offense to
 
 manslaughter;
 
 (2) The trial court erred in its instructions to the jury and in the admission of certain evidence; (3) The prosecution was guilty of prejudicial misconduct.
 

 The record reveals the following facts: About midnight on August 29, 1958, the defendant and his common-law wife, Bennie, and their friend, A. Jones, entered the Zanzibar Tavern of the California Hotel in Oakland. The bar was crowded and noisy. They could not find a place to sit, until another friend, one Palmer, who was sitting on the second stool from one end of the bar, gave up his seat to the defendant’s wife. She sat down with the defendant standing behind her on the left and Mr. Jones on the right. The victim, James Pruitt, was seated at the last stool on her right.
 

 After Mr. Jones left for a few minutes, Pruitt began to make overtures toward the defendant’s wife and to kick her. The defendant watched and several times asked Pruitt to stop molesting his wife. Pruitt, who had been drinking, refused and asked to see the defendant’s license. The defendant walked over and hit Pruitt. Pruitt staggered off the bar stool and fell to the floor. The defendant picked up a bar stool and shoved or hit Pruitt with it twice. After the second blow with the stool, the victim was rendered unconscious. The defendant and his companions left immediately but were at once apprehended and returned to the tavern where the de
 
 *718
 
 fendant made a statement to the police in which he admitted hitting the victim three times, once with his fist and twice with the bar stool. Pruitt died three days later of a fractured skull. The autopsy physician testified that the fracture could not have been caused by a fist but could have been caused by a blow or by a fall striking the head with sufficient force.
 

 Up to this point, the evidence is undisputed and uncontroverted except as to whether the defendant hit the victim with his hand or his fist. There is, however, some conflicting evidence as to what occurred after the defendant first hit Pruitt. The incident occurred very quickly and most of the witnesses were not aware of anything happening until after they heard a noise or saw the victim on the floor or saw the defendant with the bar stool raised over his head.
 

 Two witnesses, however, testified that Pruitt never got up after the first blow and never threatened or made a move toward the defendant and that while lying on the floor, Pruitt apologized to the defendant and asked not to be hit. Several other witnesses testified that after the first blow with the stool, the bartender told the defendant to stop, and the defendant stated he intended to hit the victim.
 

 The defendant and his wife testified that the victim got up after the first two blows, approached the defendant threateningly and appeared to be reaching for a weapon. It is uncontroverted that the deceased had no weapon; the only thing found in his pocket was a handkerchief.
 

 The first contention on appeal is that the evidence is not sufficient to support a conviction of murder in the second degree and as a matter of law requires reduction of the offense to manslaughter. In view of the above facts, we cannot agree. Murder in the second degree is a wilful act characterized by the presence of malice aforethought and at least ordinarily, by the specific intent to kill and by the absence of premeditation and deliberation.
 
 (People
 
 v.
 
 Bender,
 
 27 Cal.2d 164 [163 P.2d 8].) Voluntary manslaughter is intentional but neither malicious nor premeditated; it is committed upon a sudden quarrel in the heat of passion. The decisive factor in determining which crime has been committed, is the defendant’s state of mind at the time of the homicide.
 
 (People
 
 v.
 
 Danielly,
 
 33 Cal.2d 362, 385 [202 P.2d 18].)
 

 Defendant relies on
 
 People
 
 v.
 
 Bridgehouse,
 
 47 Cal.2d 406 [303 P.2d 1018], to argue that in the instant case there is a showing of adequate provocation which, as a matter of law, requires reduction of the offense to manslaughter. In the
 
 *719
 
 Bridgehouse case, the defendant on entering his mother-in-law’s home to see his estranged wife, encountered the victim who was living there with the defendant’s wife and shot him. The Supreme Court held that these facts were sufficient to bring the case within the definition of voluntary manslaughter established by section 192, as the unlawful killing of a human being, without malice, upon a sudden quarrel or heat of passion. The court went on to say at page 413: “To be sufficient to reduce a homicide to manslaughter, the heat of passion must be such as would naturally be aroused in the mind of an ordinary, reasonable person, under the given facts and circumstances or in the mind of a person of ordinary self-control.”
 

 The fundamental of the inquiry in determining whether a homicide is voluntary manslaughter is whether the defendant’s reason was, at the time of his act, disturbed or obscured by some passion—not necessarily fear and never the passion for revenge—to such an extent as would render an ordinary man of average disposition to act rashly or without due deliberation and from this passion rather than from judgment.
 
 (People
 
 v.
 
 Borchers,
 
 50 Cal.2d 321 [325 P.2d 97].)
 

 In the instant case, however, there was conflicting evidence about the circumstances giving rise to the required heat of passion. There was conflicting evidence as to the victim’s conduct in relation to Mrs. Dugger. At the trial, Mrs. Dugger testified that he was running his hands over her body, etc. In her earlier statement to the police, she stated that he was merely moving his shoulder closer to hers with the intent of catching her attention. She also stated at the trial that while all this was going on, she did not say anything to defendant who was standing just on the other side of her, and apparently did not move away. It was the exclusive function of the jury to reconcile the conflicts in the evidence and to determine whether the circumstances provided sufficient provocation, or whether in the absence of sufficient provocation, there was an element of malice in the killing.
 

 The evidence on the element of malice is also in conflict. Only the defendant and his wife testified that after being knocked down the first time, the victim got up and came toward the defendant in a threatening manner and appeared to be reaching for a weapon. All of the other witnesses testified that the defendant twice hit the victim with a bar stool while the victim lay on the floor. Two witnesses testified that the victim begged the defendant not to hit him, and one witness
 
 *720
 
 testified that the defendant stated he intended to kill the victim. Section 188 of the Penal Code provides that malice may be express or implied; it is implied when no considerable provocation appears, or when the circumstances attending the killing .show an abandoned and malignant heart.
 
 (People
 
 v.
 
 Todd,
 
 154 Cal.App.2d 601 [317 P.2d 40].)
 

 In the instant case, it was the exclusive province of the jury to determine what the defendant’s state of mind was at the time of the homicide and, to decide on the basis of the evidence, whether circumstances in mitigation such as provocation or in justification, such as self-defense, appear from the evidence.
 
 (People
 
 v.
 
 Wells,
 
 10 Cal.2d 610 [76 P.2d 493];
 
 People
 
 v.
 
 Todd,
 
 154 Cal.App.2d 601 [317 P.2d 40] ; Pen. Code, § 188.) The jury was not required to accept the defendant’s version of the killing.
 
 (People
 
 v.
 
 McAuliffe,
 
 154 Cal.App.2d 332, 334 [316 P.2d 381].) If there is substantial evidence in the record to support the judgment, the determination of the jury must be upheld.
 
 (People
 
 v.
 
 Eggers,
 
 30 Cal.2d 676 [185 P.2d 1] ;
 
 People
 
 v.
 
 Hills,
 
 30 Cal.2d 694 [185 P.2d 11].) The reviewing court must assume in support of the judgment the existence of every fact which the jury could reasonably deduce from the evidence. If the circumstances reasonably justify the verdict, the fact that the circumstances can be reconciled with innocence will not warrant a reversal.
 
 (People
 
 v.
 
 Ogg,
 
 159 Cal. App.2d 38 [323 P.2d 117].) We think the .record in the instant case supports the determination of the jury that the defendant was guilty of murder in the second degree.
 

 We turn now to appellant’s argument relating to the trial court’s error in refusing certain instructions and giving certain others, the combined effect of which it is argued was prejudicial so as to require a reversal. The record indicates that after hearing all of the instructions, the jury retired and then returned to hear further instructions on first degree murder, second degree murder, manslaughter and self-defense. Later, the jury returned for further instructions on malice and the heat of passion and then again requested the instructions on manslaughter and the heat of passion.
 

 The first argument is that the following instruction was prejudicial error because it was inflammatory :
 

 “Section 189 of the Penal Code of the State of California provides: All murder which is perpetrated by means of poison or lying in wait, torture or by any other kind of wilful, deliberate and premeditated killing or which is com
 
 *721
 
 mitted in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem or any act punishable under Section 288 o£ the Penal Code, that is a sexual offense section, is murder of the first degree, and all other kinds of murder are of the second degree. ’ ’
 

 There is no merit in this argument as the instruction is in the language of section 189 of the Penal Code, and the court had the duty to state the law in regard to the offense and the degrees into which it is divided. In
 
 People
 
 v.
 
 Chaves,
 
 122 Cal. 134, the identical argument was rejected as follows at page 141 [54 P. 596] :
 

 “The next part of the charge objected to is that in regard to the different degrees of murder. In defining the crime of murder, and the two degrees into which it is divided, the court followed the language of the Penal Code. (Pen. Code, §§ 187-189.) It is objected that ‘There is no evidence of poison, lying in wait, torture, arson, rape, robbery, burglary or mayhem in the case, nor anything that required explanation why the legislature referred to those matters, or why it had fixed tests for such homicide as occur in connection with such things or those crimes. ’
 

 “This criticism has no merit, and deserves no particular notice. Obviously it was the right and duty of the court to state the law in regard to the offense, and the degrees into which it is divided as declared by the statute, and such statement did not and could not have prejudiced the defendant.”
 

 Defendant next argues that the court should have instructed the jury on involuntary manslaughter and excusable homicide. As these instructions were not requested by the defendant, it is argued that it was error for the court not to do so on its own motion as these instructions were essential to a fair presentation of the case to the jury. We cannot agree. The record indicates that the court gave instructions on voluntary manslaughter but did not instruct on involuntary manslaughter (Pen. Code, § 192) or excusable homicide (Pen. Code, § 195).
 

 Defendant’s argument is based chiefly on
 
 People
 
 v.
 
 Hampton,
 
 96 Cal.App. 157 [273 P. 854]. In that case, the defendant provoked a fight and knocked the deceased down twice. The second time proved fatal because the deceased was knocked backwards out of the front door of the pool hall and hit his head on the sidewalk. The court held that under these facts, it was error to omit the instruction based on section 195. We
 
 *722
 
 do not think that the facts of the instant ease are at all comparable. In view of the evidence in this ease, it is our opinion that there was no error, prejudicial or otherwise, in failing to instruct on either involuntary manslaughter or excusable homicide. Subsection 1 of section 195 could be applicable only if the assault with the bar stool could be considered “a lawful act by lawful means.” But the only evidence of justification is that of defendant and his companion and was obviously addressed to self-defense. The jury was fully instructed on that phase of the defense theory and by its verdict, for reasons that are clear in the present record, resolved the conflicting evidence against defendant. Without an element of self-defense, it cannot be said that the blows with the bar stool inflicted upon the victim when he was on the floor reflect a situation where “no undue advantage is taken, nor any dangerous weapon used” or one in which “the killing is not done in a cruel or unusual manner.” (Pen. Code, § 195.)
 

 The situation disclosed by the record is one in which circumstances negating malice are totally absent if self-defense is rejected, thus eliminating the applicability of subsection 2 of Penal Code, section 192. Furthermore, it has been held that a judgment of voluntary manslaughter is the equivalent of a judgment of involuntary manslaughter as the punishment is the same.
 
 (People
 
 v. Doyle, 162 Cal.App.2d 158, 162 [328 P.2d 7] ; Pen. Code, § 193.) We do not think any prejudice accrued to the appellant from the court’s failure on its own motion to give the instruction based on sections 192 and 195 of the Penal Code.
 

 The next argument is that the court erred in giving the following instruction:
 

 "Included within the charge of murder is the crime of manslaughter. Manslaughter in the following instructions means voluntary manslaughter. Manslaughter is the unlawful killing of a human being without malice, voluntary manslaughter being that which is committed upon a sudden quarrel or heat of passion. Manslaughter is principally distinguished from murder in this, that though in manslaughter the act which occasions the death be unlawful or likely to be attended with bodily injury, yet the malice, either express or implied, which is an essential element of murder, is presumed to be wanting and the act being imputed to the infirmity of human nature, the correction ordained for it is proportionately lenient. When the mortal blow or fatal injury, though unlaw
 
 *723
 
 £ul, is inflicted in the heat of passion or excited by a sudden quarrel, such as amounts to adequate provocation, even though at the time of the killing there existed in the mind of the slayer the intent to kill his adversary, the law out of forbearance for the weakness of human nature will disregard the actual intent and reduce the offense to manslaughter. In such case, although the intent to kill may exist, it is not that deliberate and malicious intent which is an essential element of the crime of murder. To reduce an intentional felonious homicide from the offense of murder to manslaughter upon the ground of sudden quarrel or heat of passion, the provocation must be
 
 considerable.
 
 That is to say, it must be of such a character and degree as would be naturally calculated to excite and arouse the passion and the assailant must act under the smart of that sudden quarrel or heat of passion." [Emphasis supplied.]
 

 Defendant argues that this instruction was erroneous and prejudicial because by telling the jury that the provocation must be
 
 considerable,
 
 the court injected a higher standard of provocation than that set forth by the Penal Code, and inconsistent with the reasonable man standard which followed. (The record does not reveal at whose request this instruction was given.) The instruction is based on CALJIC 311 (1958 ed., p. 262), and has not been given in this exact form in any of the cases therein cited.
 

 We can, however, see no error in the instruction as here given. The instruction is phrased in the language of sections 188 and 192 of the Penal Code. The record indicates that in the instant case the instruction complained of is followed by a detailed definition of the term “heat of passion" and an explanation of the kind of provocation sufficient to reduce a homicide from murder to manslaughter. We note also that in
 
 People
 
 v.
 
 Ogg,
 
 159 Cal.App.2d 38, 50 [323 P.2d 117], the court did not reduce the offense from second degree murder to voluntary manslaughter because there was no showing of “considerable provocation. ’ ’
 

 The next argument is that the trial court erred in admitting into evidence, over objections, a second photograph of the corpse of the victim. It is argued that the admission of the second of these photographs was prejudicial, since it was cumulative and inflammatory. There is no merit in this argument. The record indicates that the photographs were admitted during the examination of the autopsy physi
 
 *724
 
 cian, and only for purposes relative to his testimony. Thereafter the photographs were not referred to again and the record does not show that the jury took them along. Whether the probative value of a particular photograph outweighs its possible prejudicial effect is a question to be resolved by the trial court in the exercise of its judicial discretion.
 
 (People
 
 v.
 
 Atchley,
 
 53 Cal.2d 160 [346 P.2d 764].) We think the second photograph here was properly received by the trial court in the proper exercise of its judicial discretion, as it tended to clarify the testimony of the autopsy physician.
 
 (People
 
 v.
 
 Brubaker,
 
 53 Cal.2d 37, 48 [346 P.2d 8].)
 

 Defendant’s final argument on appeal is that the district attorney committed prejudicial error during the cross-examination of the defendant about his relationship with his wife, as follows:
 

 “By Mr. Sutter: Q. You say that you lived as man and wife with this woman Bennie for eight years ? A. That is right.
 

 “Q. Well, actually, she went off and lived with some guy named Lonza Byrd for a substantial portion of that time, didn’t she
 
 1
 
 A. Not as I know of.' ’
 

 Then the following ensued:
 

 “Mr. Chapman-. Your Honor, I am going to object to this. It is completely immaterial and irrelevant, if true. I think it is prejudicial, I think it is misconduct on the part of the District Attorney to attempt to cross-examine on something like that. I cite him for misconduct before the Jury.
 

 “Mr. Sutter: Your Honor, if Mr. Chapman didn’t desire to open this up on direct by asking a series of questions to these witnesses to try to establish this relationship, I would not ask the question, but seeing as how he has tried to place this before the Jury and tried to build up this relationship into something that I don’t think it is, I think that I am entitled to ask the question.
 

 ‘ ‘ The Court : Are you able to—wait a moment.
 

 “Mr. Sutter: I will be very happy to show my good faith in asking the question.
 

 “The Court : Well, that should be done out of the presence of the Jury. You may do it when we recess, but you may renew the question if it is proper to ask it.
 

 “Mr. Chapman : At this point I ask the Jury be admonished to disregard that remark. ’ ’
 

 Later in the proceedings in chambers, the district attorney
 
 *725
 
 realized that he was mistaken as to the identity of the defendant's wife. The court, thereafter, admonished the jury as follows;
 

 “The Court: At this time, Ladies and Gentlemen of the Jury, you will recall this morning that Mr. Sutter asked the defendant on cross-examination whether or not it was not true that at some time during the past eight years the witness, Bennie Porter, had not lived with some other man, mentioning his name. An objection was made. The Court took the matter under submission, and at this time I wish to tell you that the objection is sustained, and to admonish you to entirely erase from your minds the question and its contents, and for all intents and purposes, in your deliberation you should treat the question as though it had never been asked.
 

 “All right, will you take the stand again, please, sir?
 

 “Elmer Dugger, the defendant, called as a witness in his own behalf, having been previously sworn, resumed the stand and testified further as follows:
 

 ‘ ‘ Cross-Examination—Continued
 

 "By Mr. Sutter : Q. Now, Mr. Dugger, during this eight-year period, you say that you were living with Bennie Porter as man and wife. There actually were periods of time when you were not living together in that way, weren’t there?
 

 “Mr. Chapman: Objection, Your Honor, immaterial, irrelevant.
 

 ‘" The Court : Objection overruled. What is your answer ?
 

 "‘The Witness : One time.
 

 “Mr. Sutter : Q. Well, in or about July of 1954 you weren’t living together, were you? A. Well, we separated about two or three weeks, I think.
 

 “The Court : Keep your voice up, please.’’
 

 The question is, therefore, whether the error was cured by the court’s admonition. It cannot be questioned that it is prejudicial misconduct to ask questions without a reasonable basis in the information available to the district attorney.
 
 (People
 
 v.
 
 Crosby,
 
 17 Cal.App. 518 [120 P. 441].) However, there is no definite rule by which asserted misconduct may be measured for the purpose of determining whether it prevented the defendant from having a fair trial.
 
 (People
 
 v.
 
 Nichols,
 
 171 Cal.App.2d 320, 324 [340 P.2d 727].) Each case must be decided on its own facts.
 
 (People
 
 v.
 
 Daniel,
 
 169 Cal.App.2d 10 [336 P.2d 556].) Particularly where a case is closely balanced and guilt has not been so clearly
 
 *726
 
 established as to render it improbable that the harmful effect of the misconduct may have turned the scales against the defendant, it has been held that the misconduct cannot be cured by an admonition to the jury.
 
 (People
 
 v.
 
 Ford,
 
 89 Cal.App.2d 467 [200 P.2d 867.) While we are mindful
 

 of the duty of the courts to exercise a restraining influence on the conduct of overzealous prosecutors, we do not think that in the instant case the question complained of was
 
 incurable error. (People
 
 v.
 
 Walters,
 
 165 Cal.App.2d 326 [331 P.2d 1037].) The evidence established that the defendant and Bennie had told the police that they were married in Reno. Subsequently, both testified that they had in fact never been legally married but had been living together as man and wife for a period of eight years. It does not appear that any different verdict would have been probable if the question had not been asked.
 
 (People
 
 v.
 
 Lyons,
 
 50 Cal.2d 245, 265 [324 P.2d 556].)
 

 In view of the foregoing, the judgment of conviction and order denying defendant’s motion for new trial be and they are each affirmed.
 

 Draper, J., and Good, J. pro tem.,
 
 *
 
 concurred.
 

 *
 

 Assigned by Chairman of Judicial Council.