[Crim. No. 1560. Fourth Dist. May 29, 1961.]

THE PEOPLE, Respondent, v. GEORGE ALBERT CURRY, Appellant.

Monroe & Chula and George H. Chula for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was tried by a jury under an indictment for murder, and was convicted of murder, second degree. The appeal is from the verdict, the order denying the motion for a new trial, the judgment and the sentence. This will be treated as an appeal from the judgment and from the order denying motion for a new trial. (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Gotham,* 185 Cal.App.2d 47, 50 [1] [8 Cal.Rptr. 20]; *People* v. *Carlson,* 177 Cal.App.2d 201, 207 [8] [2 Cal.Rptr. 117].)

Viewing the evidence, as we must, in the light most favorable to the verdict (*People* v. *Love,* 53 Cal.2d 843, 850 [1-2] [350 P.2d 705]), the facts presented by the record before us

are substantially as follows: On October 6, 1959, from a window of his residence in Garden Grove, defendant shot with a .22 calibre rifle at or toward workmen engaged in construction work on an apartment house nearby. The first shot struck within 4 feet of one of the laborers. The second shot missed another laborer by only 18 inches. There had been some previous irritation, spoken of in defendant's family, about some of the workmen on the apartment house job depositing debris on defendant's lot, but the irritation had apparently not been spoken of to the workmen by defendant. Shortly after these first shots were fired, the police were notified. Several police officers shortly arrived. Officer Trapp, who ultimately became the victim, used the loudspeaker of the police car public address system, several times calling to defendant that they were officers, that the house was surrounded, and for defendant to come out. Upon defendant's failure to appear, officer Trapp knocked on defendant's rear door, and again announced in a loud voice that they were officers and for defendant to come out unarmed. Officer Jacobs, in uniform, opened the rear door. Defendant, sitting on a couch with a rifle on his lap, raised his rifle and pointed it at Jacobs. Jacobs left the door, and Trapp moved in a wide arc towards the front of the house. Officer Runyon was standing near the front door. As Trapp came into view in the front yard, defendant fired and killed Trapp. Again one of the officers called for defendant to come out with his hands up, that an officer had been hit.

Officer Roach then attempted to enter a window in the rear bedroom, calling to defendant: "I am a police officer. Drop the gun." Roach was in uniform. Defendant again fired the rifle. Roach felt a sting in his left hand, but whether it was struck by a bullet or by flying glass is not made clear by the record. Several shots were fired by the officers. Defendant then called, "Don't shoot, don't kill me, I surrender." He came to the screen door with his hands up, repeating the same or similar words. He was then again ordered to come out slowly, and he complied. Defendant was placed under arrest, the house was immediately searched, and defendant was found to be the sole occupant. Two rifles, partly loaded, and several expended shells were found on the floor.

In the police car on the way to the police station, defendant said, "I know what I have done and I am sorry." He also repeated over and over: "I didn't mean to kill that police officer, honestly, believe me, I know what I have done, but I had no intentions of doing it. I know what will happen to me,

I'm done.'' Later he stated he was shooting at some construction workers who were dumping trash in his yard. Still later, defendant was interrogated at length and at the close of the interrogation, a tape recording was made of questions and answers purporting to amount to a summation of the facts developed by the interrogation. On stipulation of both counsel, this tape recording and a transcription thereof were placed in evidence. A second tape recording of another interrogation was also placed in evidence on stipulation of both counsel.

The chief defense was a claim of intoxication to the extent of inability to form intent. There is little doubt that defendant had, in fact, imbibed considerable intoxicating liquor. However, the evidence as to the extent of his intoxication and his understanding of what he was doing is in substantial conflict.

## INDICTMENT FORM

 Defendant complains that the indictment form fails to allege the defendant's intention, premeditation and deliberation, and that it does not give him notice of ''the specific crime'' upon which to prepare his case. He was charged with murder as defined by Penal Code, section 187. (*People* v. *Coston*, 84 Cal.App.2d 645, 646-648 [191 P.2d 521].) The sole purpose of the indictment is to inform the defendant of the charge he must meet at trial. (*People* v. *Massey*, 151 Cal. App.2d 623, 648 [4] [312 P.2d 365].) The transcript of the testimony upon which the indictment was founded informs defendant of the particular circumstances. (*People* v. *Marshall*, 48 Cal.2d 394, 399, f. n. 5 [309 P.2d 456] ; *People* v. *Carella*, 191 Cal.App.2d 115, 119 [4] [12 Cal.Rptr. 446].) The indictment form is sufficient. The complaint in that respect is without merit.

## FAILURE TO DEMUR

 Defendant was furnished, prior to arraignment, with a copy of the indictment and of the transcript of the testimony upon which the indictment was based. He did not demur to the indictment, as provided by Penal Code, section 1004. All objections appearing on the face of an indictment are waived by failure to demur before plea except as to jurisdiction of the court over the subject matter of the indictment and failure to state facts sufficient to constitute a public offense. (*People* v. *Brac*, 73 Cal.App.2d 629, 634 [3] [167 P.2d 535] ; *People* v. *Schoeller*, 96 Cal.App.2d 61, 62 [1] [214 P.2d 565].) Neither want of jurisdiction nor failure to state facts constituting a

public offense are present in the case here at bar. Thus, even had the indictment been uncertain in some minor respect (which it was not), such objection was waived by failure to demur.

## ADMISSIONS

Defendant next contends there was error in the introduction and use of tape recordings of interrogation of defendant. This objection is likewise without merit. Not only was there no objection to the introduction of these recordings, they were both actually introduced on stipulation of both counsel. Adequate foundation was properly laid by the prosecution for their introduction, and there was no valid reason why they should not be heard by the jury. (*People* v. *Albert*, 182 Cal. App.2d 729, 736 [1], 741 [14], 742 [15b] [6 Cal.Rptr. 473].)

## DUE PROCESS

Defendant contends he was denied due process of law because he was interrogated for four and one-half to five hours, and cites such authorities as *Watts* v. *Indiana*, 338 U.S. 49 [69 S.Ct. 1347, 93 L.Ed. 1801]; *Harris* v. *South Carolina*, 338 U.S. 68 [69 S.Ct. 1354, 93 L.Ed. 1815]; *Smith* v. *O'Grady*, 312 U.S. 329 [61 S.Ct. 572, 85 L.Ed. 859]; *Chambers* v. *Florida*, 309 U.S. 227 [60 S.Ct. 472, 84 L.Ed. 716]; and other cases.

All of these cases are clearly distinguishable on facts. Unlike the various situations discussed in those cases, it is clear in the case at bar that defendant was informed and clearly understood the charge against him. He was informed he would need an attorney, but he did not ask for an attorney. He was 45 years of age, and apparently had had substantial previous serious contacts with law enforcement officers. There is no contention that force or threats were used. In fact, in his own testimony, although defendant felt some questions of the officers were leading or confusing, he stated of the officers, "I didn't say they were unfair."

That defendant may have been partially intoxicated did not make his statements inadmissible nor destroy their voluntary character. (*People* v. *Dorman*, 28 Cal.2d 846, 854 [6] [172 P.2d 686]; *People* v. *Byrd*, 42 Cal.2d 200, 211 [11] [266 P.2d 505].) Whatever truth there may be in the old proverb, "In vino veritas," the matter of intoxication as presented under the facts in the case here at bar, clearly goes to the weight of the testimony and not to admissibility. (74 A.L.R. 1102; *People* v. *Farrington*, 140 Cal. 656, 661 [74 P. 288].)

## Partial Recording

 Defendant complains that one of the tapes should not have been received in evidence because it was a record of only a part of the interrogation. In one of the recordings the questions and answers occupied only the last twenty or thirty minutes of the interrogation, the officers apparently attempting to secure a summation of the results of the previous interrogation. There is no contention whatever that the tape was "doctored" or "cut," or that it misrepresented what occurred during that period of recording. Defendant merely complains that the whole of the previous interrogation was not recorded.

There is no merit in this contention. (*People* v. *Porter,* 105 Cal.App.2d 324, 331 [8] [233 P.2d 102].) We are satisfied that there was no denial of due process nor error in the admission of the tape recordings of defendant's statements.

## Discovery

 Defendant next contends he was denied a fair trial because the court failed to grant all of his blanket motions for notes, written statements and tape recorded interviews with various persons who were possible witnesses. Actually, although defendant's motion was tardy and without any supporting affidavits, the trial court did, in fact, grant defendant's motion as to all witnesses used by the prosecution, all eyewitnesses, and most of the physical evidence. It also informed defendant he might renew his motion on further affidavit. The motion was not renewed. It is true that production may be compelled before or during trial. (*People* v. *Estrada,* 54 Cal.2d 713, 716 [2] [355 P.2d 641].) However, as was said in *People* v. *Cooper,* 53 Cal.2d 755, 770 [10] [349 P.2d 964]:

"The court properly denied the blanket request that the prosecution turn over to defense counsel all the statements which it had. Although the defendant does not have to show, and indeed may be unable to show, that the evidence which he seeks to have produced would be admissible at the trial [citations], he does have to show some better cause for inspection than a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime."

We find no merit in this contention.

## Suppression of Evidence

Defendant complains, without any citation of record sup-

port for such assertion, that the prosecution suppressed evidence favorable to defendant. Because this is an extremely serious accusation, an exhaustive search of the record was made by this court, and it failed to reveal the slightest support for such complaint. ▮ The prosecution is under no compulsion to produce every possible witness who has been interviewed in the investigation of a case. Officers necessarily often interview large numbers of persons, many of whom can add nothing to the facts of the case. Cluttering up the record with their testimony would be fruitless and improper. As was said in *People* v. *Norman,* 177 Cal.App.2d 59, 68 [13] [1 Cal. Rptr. 699] :

"There is no compulsion on the prosecution to call any particular witness or not to call a witness who may have made inconsistent statements so long as there is fairly presented to the court the material evidence bearing on the charge for which the defendant is on trial." *People* v. *Kühoa,* 53 Cal.2d 748 [349 P.2d 673]; *Mooney* v. *Holohan,* 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406] ; and *People* v. *Estrada, supra,* cited by defendant, bear no factual resemblance to the case at bar.

### EXAMINATION OF DEATH BULLET

▮ Defendant complains that he was not allowed to examine the death bullet during trial. This appears to be without record support. Defendant cites none. An examination of the record by this court does not reveal that defense counsel at any time during the trial was denied full access to all evidence introduced. The death bullet was introduced in evidence. The ballistic reports of the People's experts were made available to defense counsel. He made no motion for further examination by any other expert, and voiced no suggestion that he had not been allowed to fully examine it. The point has no merit.

### AUTOPSY NOTES

▮ Defendant contends he was denied due process of law because his motion for production of all notes made by the officers at the autopsy was not granted. Defendant was provided with a copy of the autopsy report. At the commencement of the trial he demanded a copy of any notes made by the officers relating to the autopsy. There is nothing whatever in the record that we can find, and counsel has given us no citation, which shows that any officers used the notes, if any, to refresh their recollection. Defendant has not cited and

we have not found anything in the record to show that any such notes, in fact, existed. They do not appear to have been used in any way. During cross-examination of autopsy witnesses, defense counsel did not ask for them. There is no merit in this contention. (*People* v. *Mitman,* 184 Cal.App.2d 685, 691 [6] [7 Cal.Rptr. 712].)

## MALICE

Defendant contends that the statutory implication of malice under Penal Code, section 188, is unconstitutional. This is merely a rule of procedure. It does not purport to shift the general burden of proof. (*People* v. *Hardy,* 33 Cal.2d 52, 65 [15-17] [198 P.2d 865].) Defendant has not cited, nor have we been able to find, any authority which even suggests that such a rule of procedure is unconstitutional. Our Supreme Court has made its position crystal clear that implied malice applies under facts similar to those here shown. (*People* v. *Deloney,* 41 Cal.2d 832, 841-842 [8-10] [264 P.2d 532] ; *People* v. *Craig,* 49 Cal.2d 313, 319 [5] [316 P.2d 947] ; *People* v. *Gorshen,* 51 Cal.2d 716, 732 [15] [336 P.2d 492].) See also *People* v. *Todd,* 154 Cal.App.2d 601, 608 [3-6] [317 P.2d 40].

## SPECIFIC INTENT

Defendant contends that there is insufficient evidence to support the conviction of second degree murder in that the intoxication of defendant prevented him from having specific intent to kill. Penal Code, section 22, provides that voluntary intoxication is no excuse for crime, but may be considered in determining the question of intent. The defense evidence of intoxication with inferences of inability to form intent is confronted by voluminous evidence to the contrary. Defendant's securing the ammunition from an anahist bottle in the dresser drawer in his bedroom, his loading of the rifles, his acts of firing toward the workmen in the nearby apartment-building construction, his prompt raising of the rifle to point at Officer Jacobs at the back door, his prompt firing at Officer Roach when Roach attempted to come in the back window, his words when he wanted to surrender, the manner in which he walked to the officer's car, the manner in which he obeyed instructions after surrendering, his discourse with the officers on the way to the police station, his response to interrogation at the police station, the testimony of the psychiatrist called by the People, and numerous other factors were evidence that defendant well understood what he was doing and

674

the reasonable and ordinary physical consequences of his acts. These were all factors which the jury was entitled to consider and weigh in contradiction of the claim of defendant of excessive intoxication. (*People* v. *Rittger*, 54 Cal.2d 720, 730 [2], 731 [7] [355 P.2d 645].) As to the effect of intoxication in determining malice, see, further, *People* v. *Gorshen, supra,* 732 [13, 14]. ■■■ The evidence was amply sufficient to support finding of implied malice. (*People* v. *Gorshen, supra;* *People* v. *Craig, supra;* *People* v. *Ogg,* 159 Cal.App.2d 38, 50 [12-14] [323 P.2d 117]; *People* v. *Zankich,* 189 Cal.App.2d 54, 60 [1-5] [11 Cal.Rptr. 115]; *People* v. *Dugger,* 179 Cal. App.2d 714, 720 [8-11] [4 Cal.Rptr. 388].)

## INSTRUCTIONS

Defendant makes several criticisms of the instructions. Because defendant quotes no instruction nor portion of instruction, and generalizes in the language of his criticism, it is not always possible to ascertain his exact point. He first refers to page 25 of the clerk's transcript, which contains only the clerk's notes of daily trial. He then refers to plaintiff's instructions 24, 72a, 17 and 10, as being confusing.

Instruction 24 is CALJIC 307. Plaintiff's instruction 17 is CALJIC form 301, and instruction 10 is CALJIC 72b. Instruction 72a simply explains the criminal intent involved when a person intentionally does that which the law declares to be a crime. These instructions are all correct statements of the law, and were so presented with the other instructions given at the request of the People as to carefully and minutely explain to the jury the definitions of murder, first and second degree, manslaughter, malice, intent, the necessity for specific intent under various conditions, and all the other elements involved in the matters at issue in the case at bar.

By plaintiff's instruction Number 22, which is in the form of CALJIC 305, the various elements in second degree murder were clearly and succinctly set forth. ■■■ Jury instructions must be responsive to the issues as those issues are determined by the evidence (*People* v. *Sutic,* 41 Cal.2d 483, 493 [7] [261 P.2d 241]), and the instructions in this case are responsive to such issues.

■■■ Defendant complains of the following instruction: "Murder may be committed without a specific intent to take human life. To be so committed, however, the defendant must intend to commit acts that are likely to cause death and that show a conscious disregard for human life.

"Thus if the natural consequences of an unlawful act be

dangerous to human life, then an unintentional killing proximately caused by such act will be murder in the second degree, even though the unlawful act amounted to no more than a misdemeanor. In such case, the malice aforethought is implied from the wanton recklessness.''

This is a correct statement of the law. (*People* v. *Hubbard,* 64 Cal.App. 27, 37 [6] [220 P. 315]; *People* v. *Thomas,* 41 Cal.2d 470, 479 [261 P.2d 1] [concurring opinion]; 25 Cal. Jur.2d 621, 622.) Nothing in the case of *People* v. *Carmen,* 36 Cal.2d 768 [228 P.2d 281], when that case is read and understood in its entirety, is in any way contradictory of this statement.

■■■■ Defendant complains that there was confusion between the instructions given by the court at the request of the prosecution, which show that under certain circumstances specific intent to kill is not required, and that given by the court at the request of defendant which state that there must be specific intent to kill in a crime of first or second degree murder or voluntary manslaughter. This instruction, given at the request of defendant, was clearly erroneous. (*People* v. *Gorshen, supra,* 732 [15].) Defendant is in no position to claim error as he is the one who requested the instruction and the error was in his favor. (*People* v. *Curtis,* 36 Cal.App.2d 306, 321 [12] [98 P.2d 228].)

■■■■ Defendant complains for the first time in his reply brief that the court erred in refusing defense instructions to the general effect that homicide by gunshot is not necessarily murder; concerning ignorance or mistake of fact, accident and misfortune. The instructions rejected were either not applicable or had already been covered, and there was no prejudicial error in their refusal. (*People* v. *Wray,* 56 Cal. App.2d 347, 351 [2] [132 P.2d 246].)

Defendant also complains of the court's instructions relating to how intent is manifested, CALJIC 73, and defendant's own instruction on mental condition short of insanity, CALJIC 73b, which he contends are contradictory. We find no such contradiction. Defendant's instruction was appropriate to supplement the court's instruction, which correctly stated the law in the case. (*People* v. *Gomez,* 41 Cal.2d 150, 164 [258 P.2d 825]; *People* v. *Boggs,* 12 Cal.2d 27, 34 [3] [82 P.2d 368]; *People* v. *Walsh,* 50 Cal.App.2d 164, 171 [2] [122 P.2d 671].)

### MODIFICATION

Defendant repeats his arguments relating to specific intent

in the contention that the judgment should be modified to manslaughter. It has already been made clear that the implied finding of the jury of malice aforethought is supported by substantial evidence. A recital of further detail than that which is already given is unnecessary. (*People* v. *Ogg, supra*; *People* v. *Zankich, supra*; *People* v. *Sheran*, 49 Cal.2d 101, 108 [1] [315 P.2d 5].)

A review of the entire evidence shows that defendant received a full and fair trial, and that the trial court meticulously and carefully protected the rights of defendant, and properly instructed the jury.

The judgment and order denying a new trial are affirmed.

Griffin, P. J., and Coughlin, J., concurred.