[Crim. No. 3338.   Third Dist.   Nov. 23, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. MARCEL DOMINGO, Defendant and Appellant.

John O. Fugazi for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Barry Bunshoft, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, J. — Defendant was charged with murder, pleaded not guilty, waived a jury, was tried by the court and found guilty of voluntary manslaughter, a lesser included offense. His motion for a new trial was denied. This appeal followed.

The sole question is whether sufficient evidence sustains the trial court's finding.

Voluntary manslaughter is homicide unpremeditated, without malice aforethought, but committed upon sudden quarrel or in heat of passion. *(People* v. *Dugger,* 179 Cal. App.2d 714, 718 [4 Cal.Rptr. 388].) The test distinguishing it from murder is: " 'whether or not the defendant's reason was, at the time of his act, so disturbed or obscured by some passion—not necessarily fear and never, of course, the passion for revenge—to such an extent as would render ordinary men of average disposition liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.' " *(People* v. *Borchers,* 50 Cal.2d 321, 329 [325 P.2d 97], quoting from *People* v. *Valentine,* 28 Cal.2d 121, 139 [169 P.2d 1].)

Here homicide by stabbing is admitted but defendant's

contention is that the evidence establishes without conflict that he acted justifiably—in self-defense.

Penal Code section 693 provides in part: "Resistance sufficient to prevent the offense may be made by the party about to be injured:

"1. To prevent an offense against his person. . . ."

█ After reviewing the evidence, our conclusion is the evidence was sufficient to justify the trial court in finding a homicide in heat of passion and without justification.

The alleged victim, Wing Yip, was a 90-year-old Chinese manager of a workingman's hotel or lodging house in Stockton. Defendant is a 55-year-old Filipino farm worker who had been a tenant of the hotel for five years when the fatal stabbing occurred on November 4, 1961. Undisputed evidence shows: that on the evening of that day, after work on the ranch, defendant returned to the hotel. The stabbing occurred in the hallway of the third floor during the second of two encounters between Wing Yip and defendant, separated, apparently, only by a few minutes. Altercations occurred during both meetings, generated by the fact that on previous occasions defendant had brought male companions to his room. According to the prosecution, the old Chinese had been disturbed by the noise made by these men. Defendant testified Wing Yip was "mad" because defendant had used gas to cook dinners for his friends.

The prosecution's case rested principally upon the testimony of Peouigunn Ken Yip of the Hoo Kee Noodle factory. To this factory, two doors from the hotel, according to Ken Yip, Wing Yip had come at about 7 p. m., holding his hands to his left side at the abdomen, saying: "That Filipino boy stabbed me." and "Call the police." He was in pain.

Ken Yip called the police and then questioned the wounded Chinese as to what had happened. Wing Yip told him the stabbing had occurred during an argument over defendant's bringing to his room friends. He added that he had been carrying a "pan" of hot water from the kitchen, intending to go to his room to soak his feet; that on the way defendant had attacked him; that Wing Yip had raised his arms to protect himself and the water had spilled on defendant. He said that defendant had stabbed him with his knife and had run down the stairs. Wing Yip had followed him.

This evidence was supplemented by that of Stockton Police Sergeant Bird. He had examined the premises and had found water on the hallway floor and on the door of Room 38 at

the head of the stairs. The distance from the kitchen where Wing Yip had obtained the hot water to the point where the spilled water was found is about 30 feet. Defendant's room is next to the kitchen.

Sergeant Bird visited defendant at the hospital where he had gone for treatment of first and second degree burns. Defendant, in reply to the officer's questioning, admitted he had stabbed Wing Yip once. He produced the knife. Asked why he had attacked the old Chinese, he stated it was because the latter had thrown hot water on him.

A physician testified to three knife wounds suffered by Wing Yip, a wound penetrating the abdominal cavity, requiring surgery, a chest wound through the pleura into the chest cavity, a third wound in the neck. An autopsy pathologist stated that death (3 days after the stabbing) was from shock due to complications from the knife wounds.

Defendant took the stand in his own defense. He testified that Wing Yip, on the evening of the stabbing, accosted him in the hallway when defendant was on his way to his third floor room with a friend, Charlie Supnet; that the Chinese swore at him and slapped him. Asked on cross-examination: "Q. And you didn't slap him either, is that right?" defendant answered: *"Before I slap him* he call me 'magamba cayay' bad word." Defendant also testified: "Q. He said, 'God Damn you?' A. Yes, that's right. Q. And then he slapped you, is that right? A. Yes." (Emphasis supplied.) Then, according to defendant, Charlie Supnet ran down the stairs, Wing Yip proceeded to the kitchen and defendant to his room.

A few minutes later the Chinese came out of the kitchen, carrying, according to defendant, a "pot" of hot water. Defendant emerged from his adjoining room at the same time. The two walked down the hallway together. Defendant testified he began the conversation by asking: " 'Why did you slap me like that? I didn't do anything wrong.' " And " 'You're not supposed to do that to me.' " Wing Yip's reply was " 'nay hi kai dai' " (meaning son of a bitch). Then, says defendant, the Chinese threw water on him which struck him in the mouth; and defendant stepped backward and took out his knife "because he's too big, I cannot—I cannot fight with my hands." Wing Yip then threw water again on defendant's chest and also hit him with the water pot. Defendant then said: "I tap him . . . and the pot was fell down." Defendant said he didn't mean to kill Wing Yip.

At first he only intended to "scare him, not to throw the water anymore." Defendant testified the Chinese stated he was going to get his gun. Defendant then ran downstairs, turned and saw Wing Yip following but did not see a gun.

On cross-examination defendant admitted a prior felony conviction for assault with a deadly weapon (a knife).

Defendant's testimony regarding the first encounter was partly corroborated by Charlie Supnet who said he had seen Wing Yip slap defendant. A Filipino tenant of the hotel, Domingo Arroya, testified that from a point by the door of his own room, he had seen and heard Wing Yip "talk bad" and throw water on defendant who had thrown both hands up to protect his face. He saw no knife. Sergeant Bird, called as a rebuttal witness by the prosecution, testified he had investigated to test Arroya's story and that, standing at the latter's alleged point of observation, a person could not have witnessed the incidents Arroya claimed to have seen.

The prosecution's evidence was sufficient to sustain the trial court's finding of voluntary manslaughter and to refute defendant's contention that he acted in self-defense. Defendant's evidence merely created a conflict in the evidence, tending to deny in part the prosecution's proof showing defendant to have been the aggressor in the second incident.

■ A reviewing court may not reverse a judgment for insufficiency of the evidence unless the record clearly shows that upon no hypothesis whatsoever is there sufficient evidence to support the judgment. (*People* v. *Newland,* 15 Cal.2d 678, 681-682 [104 P.2d 778] ; *People* v. *Kerr,* 37 Cal.2d 11, 16 [229 P.2d 777] ; *People* v. *Gregory,* 123 Cal.App.2d 582, 584 [267 P.2d 58] ; *People* v. *Jones,* 36 Cal.2d 373, 375 [224 P.2d 353].) Here, even if we accord to the defense's evidence weight which we are neither inclined nor entitled to give it, the picture presented is not clearly one of a defendant, about to be injured, offering only that resistance which was sufficient to prevent the offense. Defendant cites *People* v. *Zuckerman,* 56 Cal.App.2d 366 [132 P.2d 545], in support of the rule that a person attacked is not bound to retreat; that he may stand his ground to repel the assault even though it involves taking the life of his adversary. The facts in Zuckerman were dissimilar to the facts here. ■ A 90-year-old Chinese of slender build would not appear to be so formidable an antagonist, and a pan or pot of hot water so lethal a weapon as to justify a brutal knife attack which three

wounds in three separate areas of the victim's body (two of them vital) bespeak.

Be that as it may, the trial court was justified in reaching the conclusion (and we, although without the advantage of seeing the witnesses and hearing the testimony, believe we might have reached the same one) that the spilling of water followed the stabbing, or in any event, followed overt gestures by defendant with his knife.

Defendant argues that since the People's witness, Sergeant Bird, himself (in relating defendant's version of the stabbing), relayed defendant's contention that the deluge of hot water preceded the knifing, such recital binds the prosecution. He cites Penal Code section 1105, which provides that: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

Arguing from this, defendant urges that, since the prosecution's own evidence (i.e., defendant's "admission" as related to Sergeant Bird) showed excuse, defendant must be acquitted.

Defendant's conclusion is a non sequitur. The prosecution here did not rely upon Penal Code section 1105; nor is it applicable. ▇ When the section *is* appropriately invoked, it merely declares a rule of procedure shifting to the defendant the burden of "going forward" to establish circumstances of mitigation, excuse or justification after a homicide by defendant has been established. *(People* v. *Hardy,* 33 Cal.2d 52, 65 [198 P.2d 865] ; *People* v. *Thomas,* 25 Cal.2d 880, 896 [156 P.2d 7] ; *People* v. *Searle,* 33 Cal.App. 228, 232 [164 P. 819].) The rule, simply stated, is that Penal Code section 1105 is of no aid to the prosecution where its own proof without conflict shows justification. *(People* v. *Estrada,* 60 Cal.App. 477 [213 P. 67].) But here the prosecution did not seek the aid of said section. It undertook to, and did, sustain the burden of proving voluntary manslaughter without reliance upon any statutory shifting of burden as a crutch. Had the prosecution's case rested entirely upon Sergeant Bird's testimony regarding defendant's admission, it would have fallen short of its burden. *(People* v. *Estrada, supra; People* v. *Salaz,* 66 Cal.App. 173, 181 [222 P. 777].)

But here there was independent evidence, including that of Peouigunn Ken Yip, showing defendant the aggressor with lack of justification. That was sufficient. Even circumstantial evidence has been held to suffice. *(People v. Freudenberg*, 121 Cal.App.2d 564, 575-576 [263 P.2d 875] ; *People v. Jacobs*, 111 Cal.App.2d 281, 283 [244 P.2d 500].)

Defendant argues further that respondent's contention that the water spilled upon defendant when Wing Yip raised his arms to defend himself is "contrary to the physical facts and contrary to human experience." Respondent replies: "The only impossibility . . . is predicting where water will land when spilled by a man under a knife attack." We agree with the statement last quoted.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.