I concur in the judgment except I would reduce the murder convictions from first to second degree. I agree with the Attorney General that there is substantial evidence to support liability on a provocative act theory. But defendants are correct: the fact that the provocative act theory applies does not permit the return of first degree murder verdicts; transferred intent rules do not apply to this case; and because the decedent, Max Sanchez, was an accomplice, the first degree findings cannot be justified on a felony-murder rule theory.
 The provocative act doctrine is a form of implied malice which allows an accused to be convicted of second degree murder. The controlling authority is in the following language in People v. Nieto Benitez (1992)4 Cal.4th 91, 109-110 [13 Cal.Rptr.2d 864, 840 P.2d 969]: "Other authority also supports the People's contention that, where the defendant obtains a lethal weapon and then engages the victim in an argument, malice may be implied — from the circumstances leading to the killing — to support a conviction of second degree murder. (See, e.g., People v.Rosenkrantz (1988) 198 Cal.App.3d 1187 [244 Cal.Rptr. 403] [defendant, incensed that his younger brother and an acquaintance had discovered defendant's homosexuality, purchased a semiautomatic weapon went to the acquaintance's residence armed with the weapon, engaged him in an argument, and then fatally shot him]; In re Russell H. (1987)196 Cal.App.3d 916 [242 Cal.Rptr. 488] [minor's retrieval of a *Page 1464 
handgun for the purpose of coercing a drug seller to give him drugs, followed by an argument and discharge of the weapon, resulting in unintentional death of victim]; People v. Summers (1983)147 Cal.App.3d 180 [195 Cal.Rptr. 21] [defendant's efforts in locating intended victim, making a special trip to arm himself with a concealed weapon, and then producing the weapon in a threatening fashion in victim's presence provided ample evidence of defendant's implied malice to support second degree murder conviction]; People v. Love (1980)111 Cal.App.3d 98 [168 Cal.Rptr. 407] [following argument between defendant and victim over use of victim's vehicle, defendant placed gun near victim's head and, after victim continued to argue, pulled the trigger].)" As explained in Nieto Benitez, other decisions also describe that provocative conduct can amount to implied malice which will support a second degree murder conviction. (People v. Curry (1961)192 Cal.App.2d 664, 674-675 [13 Cal.Rptr. 596] ["`Thus if the natural consequences of an unlawful act be dangerous to human life, then an unintentional killing proximately caused by such act will be murder in the second degree, even though the unlawful act amounted to no more than a misdemeanor.'"]; People v. Hubbard (1923) 64 Cal.App. 27, 37 [220 P. 315] [upholding instruction that stated if a "killing `is done in the commission of an unlawful act, the natural consequences of which aredangerous to life, . . . this is murder of the second degree'" (original italics)]; see People v. Benson (1989) 210 Cal.App.3d 1223, 1225,1228-1231 [259 Cal.Rptr. 9].) One decision following Nieto Benitez
explains that when malice is implied from provocative conduct, the accused may be convicted of second degree murder. (See People v.Karapetyan (2003) 106 Cal.App.4th 609, 619 [130 Cal.Rptr.2d 849].)
 Nor do cases discussing transferred intent change matters. The Attorney General, while discussing the instructional error issue and at oral argument, relies on People v. Sanchez (2001) 26 Cal.4th 834, 852 [111 Cal.Rptr.2d 129, 29 P.3d 209]. Our Supreme Court explained its holding in Sanchez thusly: "The circumstance that it cannot be determined who fired the single fatal bullet does not undermine defendant's conviction under either of the two first degree murder theories advanced against him at trial — premeditation (§ 189), and murder by means of intentionally discharging a firearm from a motor vehicle with specific intent to inflict death. (Ibid.) Defendant's act of engaging Gonzalez in a gun battle and attempting to murder him was a substantial concurrent, and hence proximate, cause of Estrada's death through operation of the doctrine of transferred intent. Sufficient evidence supports defendant's first degree murder conviction under either theory. . . ." (People v.Sanchez, supra, 26 Cal.4th at p. 839.)
 Sanchez discusses the classic law school question which has real life and death consequences in California: A, with malice and premeditation or under *Page 1465 
a felony-murder theory, shoots at B but strikes C. That scenario is unrelated to the present case. Here, the position of the Attorney General seems to be that if A, B, and C, with premeditation and malice try to kill D who kills C first, then the mens rea of A, B, and C is transferred to themselves because of their intent vis-á-vis D — a proposition that finds no support in the common law, any California statute or Sanchez.
Moreover, Sanchez never discusses whether a first degree murder conviction may be returned when the malice is premised solely on provocative act analysis. Thus, Sanchez is not authority for the issue posited in this case. (People v. Braxton (2004) 34 Cal.4th 798, 819 [22 Cal.Rptr.3d 46, 101 P.3d 994]; People v. Sapp (2003) 31 Cal.4th 240,262 [2 Cal.Rptr.3d 554, 73 P.3d 433].)
 Nor can the Attorney General find solace in People v. Cervantes (2001)26 Cal.4th 860, 865-874 [111 Cal.Rptr.2d 148, 29 P.3d 225], a case where the accused's second degree murder conviction premised on a provocative act was reversed for insufficiency of the evidence. Our Supreme Court identified the issue as follows, "We granted review to decide whether defendant, a member of a street gang, who perpetrated a nonfatal shooting that quickly precipitated a revenge killing by members of an opposing street gang, is guilty of murder on the facts before us." (People v.Cervantes, supra, 26 Cal.4th at pp. 862-863.) Later, our Supreme Court identified the controlling issue, "In particular, the essential element with which we are here concerned is proximate causation in the context of a provocative act murder prosecution." (Id. at p. 866.) Our Supreme Court held, on proximate cause grounds, the evidence was insufficient to support the second degree murder conviction: "In short, nobody forced the [the opposing street gang's] murderous response in this case, if indeed it was a direct response to defendant's act of shooting Linares. The willful and malicious murder of [the decedent] at the hands of others was an independent intervening act on which defendant's liability for the murder could not be based." (Id. at p. 874.) Thus, Cervantes does not support the position of the Attorney General. (People v. Braxton, supra,34 Cal.4th at p. 819; People v. Sapp, supra, 31 Cal.4th at p. 262.)
 Finally, the felony-murder rule does not apply to this case. Mr. Sanchez was an accomplice of defendants, Julio Hernandez and Reyas Concha, in the brutal attack on Jimmy Lee Harris. The felony-murder rule does not apply under these circumstances. (People v. Washington (1965)62 Cal.2d 777, 780-782 [44 Cal.Rptr. 442, 402 P.2d 130]; 1 Witkin 
Epstein, Cal. Criminal Law (3d ed. 2000) § 147, p. 761.) *Page 1466 
 I would reduce the convictions for the completed homicide counts to second degree murder. This will render the instructional error contentions moot. Otherwise, I am in accord with my colleagues' conclusions. *Page 1467