[Crim. No. 29110. Second Dist., Div. Four. Feb. 11, 1977.]

In re WING Y., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
WING Y., Defendant and Appellant.

**COUNSEL**

Luke McKissack for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

JEFFERSON (Bernard), J.—In a petition filed by the Probation Officer of Los Angeles County, minor Wing Ching Y. was alleged to come within the provisions of Welfare and Institutions Code section 602, in that on March 15, 1976, he committed a robbery in violation of Penal Code section 211. The minor denied the allegations of the petition.

After an adjudication hearing before a referee, the petition was sustained. The minor was declared a ward of the court, granted probation, and placed in the home of his parents. The minor's application for rehearing, made pursuant to section 558 of the Welfare and Institutions Code, was denied. The minor has appealed from the order of denial of his petition for rehearing. (Welf. & Inst. Code, § 800; *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406].)

The robbery occurred at a liquor store in Monterey Park at about 9:40 p.m. on March 15, 1976. At that time two young Chinese men entered the store; one was shorter than the other; the taller had long hair. The shorter of the two attempted to purchase cigarettes. Ming-Juinn Uen, the Chinese proprietor of the store, requested identification; none was forthcoming, and the young man purchased candy instead. While Uen was making change, he heard a voice in Cantonese, directing him not to move. Uen saw a gun pointed at his head; one of the youths reached into the cash register and took $250. The robbers then left the store quickly.

At the trial Uen was unable to make a positive identification of minor Wing, although he thought the minor resembled the taller of the two young men. Although it was very light in the store, Uen could only state that the minor "[l]ooks pretty close, but I could not make sure."

Carolyn Hoggan was driving down the street by the liquor store when the two robbers ran from the store. As she pulled up to a stop sign, she observed them entering a car. She saw them for only a short period of time. While the street was light, they were about 30 feet away. Miss Hoggan identified the minor Wing as the taller of the two; she characterized her identification as "[p]retty sure." A third witness, Clementine Morton, was parked in front of the liquor store. She observed the holdup, and saw the two robbers depart. However, she could make no definite identification of the minor, although she stated that he did resemble the taller of the two. All of the witnesses described the

taller of the two robbers as being below six feet in height, while the minor is six feet one inch tall.

The minor did not testify.

Called as a witness on the minor's behalf was Sammy Lee, aged 19, whose testimony provided the minor with an alibi for the evening of March 15, 1976. Lee stated that he was with Wing at the Sing Lee Theater and Tower Records, from 7 p.m. to 11 p.m. when he drove him home. Tower Records is located on Sunset Boulevard, some 12 miles from the robbery site.

On cross-examination, over an irrelevancy objection of defense counsel, Sammy Lee testified to the following: BY MR. WIATT (deputy district attorney): "Q. Do you know of a gang by the name of Wah Ching? . . . [¶] THE WITNESS: Yes. I've heard of it. . . . [¶] Q. BY MR. WIATT: Are you a Wah Ching? [¶] A. Used to be. [¶] Q. And when did you stop being a Wah Ching? [¶] A. About two years."

Lee was then asked by the prosecutor if the other boys who had accompanied Lee and the minor Wing on the night of the robbery (to the theater and the record store, according to his testimony) were members of Wah Ching. He stated that he didn't know; Lee also testified, in response to the prosecutor's question, that he did not know if the minor Wing was a member of Wah Ching.

Also called as a witness on the minor's behalf was Kenny Tam, aged 17, who testified that he had known the minor for five years. Tam stated that, on the night in question, March 15, 1976, he, Sammy Lee, and the minor had been at the Sing Lee Theater with some other boys, from 7 p.m. to about 9 p.m. and then had gone to Tower Records. He last saw the minor at 11 p.m. Over a defense objection on the ground of irrelevancy, Tam was permitted to be cross-examined by the prosecutor on the subject of membership in the Wah Ching gang as follows: "Q. BY MR. WIATT: Are you a member of the Wah Chings now? [¶] A. No. [¶] Q. Have you been a member of Wah Chings? [¶] A. Yes. [¶] Q. And when did you stop being a member? [¶] A. Three years ago. . . . [¶] Q. Now, how about the other boys, Kenny, besides Kenny, yourself, how about Wing, was he a Wah Ching? [¶] A. Before. [¶] Q. He was one before? [¶] A. Yes."

The prosecutor was permitted to elicit from Kenny Tam, on cross-examination, that several of the other boys at the theater on March 15, 1976, had been members of Wah Ching at some prior time. Tam answered affirmatively when asked if there were hundreds of Wah Chings.

The defense again objected to the subject of Wah Chings being introduced into evidence, on the ground that it was irrelevant to the issues of the case. The prosecutor explained to the trial court that he was attempting to show, by common Wah Ching membership of the witnesses and the minor, that the witnesses were biased. The defense objection was overruled. Later, Tam was asked: "Q. What kind of things did you do when you were a Wah Ching? Nothing? [¶] A. Normal. [¶] Q. Normal things? [¶] A. Yeah."

The prosecution called as a rebuttal witness, Carl Lou, a Los Angeles police officer. Lou testified that he was assigned to the Asian Task Force, a group which investigated Asian—specifically, Chinese—gangs, and had been in existence for eight months. Officer Lou testified that he was then devoting all of his time as a police officer to this Task Force and that he was spending most of his time investigating the Wah Chings. Officer Lou stated that there were two gangs in Chinatown at the time he was testifying—Wah Chings and Joe Fongs. Upon being asked how he kept abreast of what's going on with the Wah Chings, he replied: "Well, to safely say I have a very good rapport with the community group. I went to school, I work in the community. I have good rapport with the community leaders where I get good information on the activities of both gangs. I know a lot of the businessmen and merchants in Chinatown where I am on a speaking level with them."

The prosecutor then elicited the following testimony from Lou on direct examination: "Q. I'm going to ask you if you know the reputation in the Chinese community of Kenny Tam as regards to whether or not he is a member of the Wah Chings at this time? [¶] A. Yes. I can say that Kenny Tam is an active Wah Ching member. [¶] Q. That's his reputation?" Defense counsel again objected to any questions on the subject of the Wah Ching gang, on the ground of irrelevancy, but the objection was overruled.

Officer Lou was then permitted to testify that Sammy Lee, another defense witness, was also an active Wah Ching member, and that Sammy

Lee had a brother, Philip, who was a past president of Wah Ching but who was now just an advisor of Wah Ching. The trial judge permitted Officer Lou to be asked by the prosecutor regarding how many successful prosecutions he had been able to "get going on Wah Ching gang activity." Officer Lou replied: "I'd say very few. I would safely say about five arrests, very few." Officer Lou was permitted to state his reasons for very few successful prosecutions as follows: "I feel the fear syndrome in Chinatown is very high at this time." The prosecutor then asked Officer Lou: "What has been your personal experience in talking to members of the community regarding making complaints against Wah Ching activity?" To which the officer replied: "The past victims in the community have been very reluctant in coming forth and making crime reports and signing crime reports. [¶] There've been many occasions where a victim has approached me and has identified the subject by name. . . . [¶] There's many times when there's been a victim in Chinatown has approached me off duty and has given me a name and picked out pictures from mug books, from my personal mug books, and has told me they have—'This person has approached me and taken so much money and told me words in Chinese.' " The officer then testified that these people refused to make complaints.

Officer Lou was then asked by the prosecutor: "Do you know the reputation of Wing Ching . . . as to his reputation for being an active member of the Wah Ching?" Officer Lou answered: "Yes. He's now an active member of the Wah Ching." Officer Lou also testified that Wah Ching is a very close-knit group, and that "Wah Chings are involved in many extortions, robberies, burglary from motor vehicles, theft from motor vehicles in Chinatown."

Upon this appeal, the minor contends that a number of errors were committed when the trial court sustained the petition and made the minor a ward of the court. ■ First of all, he argues the sufficiency of the evidence—the sufficiency, in essence, of Carolyn Hoggan's identification testimony. We reiterate what has been said before: " 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which

is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]' [Citations.]" (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267].)

It is true, as the minor contends, that two of the three eyewitnesses to the robbery declined to state with certainty that the minor was one of the two robbers. But Carolyn Hoggan did so identify him and, as *Thornton* declares, it was the trial judge's function to evaluate her testimony, i.e., the certainty of her identification. There were no unusual or suspicious elements contained in the Hoggan testimony. It is not uncommon for criminal matters to be determined on the basis of similar testimony. By their very nature, many crimes, including holdups of liquor stores, are committed in haste; evidence of split-second identification, such as that involved here, is necessarily offered as a result. In this case, the trial judge found persuasive Miss Hoggan's perception as a witness. If this was the minor's only contention of error, the trial court's order sustaining the petition should be upheld.

However, the introduction into evidence of testimony with respect to information, both general and specific, about the Wah Ching gang, the minor contends, raises insuperable problems regarding the correctness of the order in sustaining the petition. We have set forth the pertinent testimony herein, and we agree that the Wah Ching evidence was, for the most part, improperly admitted and catastrophically prejudicial to the minor's case.

 It is true, as the Attorney General asserts, that a witness may, on cross-examination, be asked about group membership he shares with a party to the action, on the theory that such common membership is a factor that tends to impeach a witness' testimony by establishing bias. As was stated in *People* v. *James* (1976) 56 Cal.App.3d 876, 886 [128 Cal.Rptr. 733], "[t]he existence of a bias, interest, or motive to falsify is a commonly used factor to attack the credibility of a witness. [Citation.] Such bias, interest or motive may be elicited by cross-examination of a witness as well as established by extrinsic proof. [Citations.] Relationship of a witness to others involved in the case is a material fact bearing on the credibility of the witness." (See, also, Evid. Code, § 780, subd. (f) and *People* v. *Avila* (1938) 29 Cal.App.2d 627, 631 [85 P.2d 200].) Thus, the prosecution in the instant case properly could inquire of witnesses

Sammy Lee and Kenny Tam, called by the minor Wing, regarding their friendship with Wing, including their common group membership, as a means of attacking their credibility as witnesses, by establishing a bias in favor of the minor. However, at that point the inquiry into Wah Ching should have ended.

The rebuttal testimony of Officer Lou, introduced by the prosecutor, raises serious issues of relevancy, hearsay, and undue prejudice. The Attorney General contends that the minor had waived any consideration of these alleged errors on appeal by the failure to make timely objection below to the proffered evidence. But the record is clear that the minor's trial counsel raised the objection of irrelevancy and also a hearsay objection when the prosecutor sought to prove the witnesses' and the minor's membership in the Wah Ching gang through reputation evidence. The trial-counsel objections thus satisfied the requirements of Evidence Code section 353, subdivision (a), that, in order to be able to complain of a finding by reason of the erroneous admission of evidence, "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion . . . ."

Evidence Code section 210 defines "relevant evidence" as "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Evidence Code section 780 defines evidence relevant to the credibility of a witness as "any matter that has any tendency in reason to prove or disprove the truthfulness of his [a witness'] testimony . . . ." ▮ The Attorney General argues that the *reputation evidence,* testified to by Officer Lou, that the witnesses Sammy Lee and Kenny Tam and the minor Wing were active members of the Wah Ching gang, was relevant to impeach the testimony of Lee and Tam that neither they nor the minor were current members of this gang, by *contradicting* this testimony —an established method of attacking credibility of a witness by proving untruthful any portion of a witness' testimony. (Evid. Code, § 780, subd. (i).)

But proof of a fact contrary to the testimony of a witness—here gang membership—must be accomplished by admissible evidence and not by evidence that is subject to an exclusionary rule. *Reputation* evidence is *hearsay* evidence (*Orloff* v. *Los Angeles Turf Club* (1951) 36 Cal.2d 734

[227 P.2d 449]) and, to be admissible, must come within some exception to the hearsay rule. Evidence of reputation is evidence of what unnamed declarants collectively think. In the case at bench, it is obviously offered to prove that the two witnesses and the minor were *actual* members of the gang—as asserted by the unnamed reputation declarants.

Reputation evidence is made admissible by the Evidence Code as an exception to the hearsay rule to prove very limited issues or facts: (1) to prove or disprove a witness' character trait for honesty or veracity or their opposites (Evid. Code, §§ 786, 1100, 1101, subd. (c); Jefferson, Cal. Evidence Benchbook (1972) § 28.6, pp. 445-450); to prove a trait of character when it is an ultimate issue in dispute in an action (Evid. Code, § 1100; Jefferson, Cal. Evidence Benchbook (1972) §§ 33.1-33.2, pp. 589-591); and to prove that a person possessed a particular character trait and committed an act on a specified occasion in conformity with that character trait. (Evid. Code, §§ 1101-1103; Jefferson, Cal. Evidence Benchbook (1972) §§ 33.3-33.5, pp. 591-597.)

Officer Lou was competent to testify as to the membership in the Wah Ching gang of Lee, Tam and the minor Wing, but *only* from personal knowledge. Thus, Evidence Code section 702, subdivision (a), provides that, unless the matter pertains to the subject of expert testimony, "the testimony of a witness concerning a particular matter is *inadmissible* unless he has *personal knowledge* of the matter. Against the objection of a party, such personal knowledge *must* be shown before the witness may testify concerning the matter." (Italics added.) At the adjudicatory hearing, the minor's counsel raised the lack-of-personal-knowledge objection to Officer Lou's reputation evidence testimony. The trial judge overruled this objection. This was error.

In the case at bench, the minor Wing did not testify. It is abundantly clear that Officer Lou's inadmissible testimony regarding Wing's present membership in Wah Ching, and regarding the criminal nature of Wah Ching, was being offered by the prosecution to help establish that Wing committed the charged offense. If the trial judge admitted this hearsay evidence as being relevant solely to attack the credibility of witnesses Lee and Tam, it taxes one's credulity to believe that the trial judge was able to consider such evidence for this limited erroneous use, and not consider that such testimony had a bearing on proving that it was more likely than not that the minor Wing was a gang member and, as such, had committed the charged offense.

However, neither the described criminal activities of Wah Ching nor the asserted active membership in the group by the minor Wing, as testified to by Officer Lou, had any "tendency in reason" to prove a disputed fact, i.e., the identity of the person who committed the charged offense. Membership in an organization does not lead reasonably to any inference as to the conduct of a member on a given occasion. Hence, the evidence was not relevant. It allowed, on the contrary, *unreasonable* inferences to be made by the trier of fact that the minor Wing was guilty of the offense charged on the theory of "guilt by association."

■ The error in admitting the irrelevant and hearsay testimony of Officer Lou regarding the criminal activities of the Wah Ching gang and regarding membership in the gang on the part of the minor and his two witnesses constituted prejudice to the minor of an irreparable nature —particularly where, as here, the identification testimony of the minor was not particularly strong or persuasive. Such extremely prejudicial and inadmissible evidence cannot lend support to a finding that the minor Wing committed the robbery as charged to justify the sustaining of a petition declaring the minor a ward of the juvenile court. Welfare and Institutions Code section 701 provides, in pertinent part, that "proof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, . . ." We hold that the trial court's finding in the instant case violated section 701.

■ If a juvenile court is to find that a minor committed a violation of the criminal laws, it must do so on *relevant, nonprejudicial* evidence. Nothing less will suffice. A minor's rights in this regard are equal to those of an adult charged with a criminal law violation. (See *People* v. *Guerrero* (1976) 16 Cal.3d 719, 730 [129 Cal.Rptr. 166, 548 P.2d 366].)

Because we are compelled to reverse the judgment, we do not reach the minor's contention that he was deprived of constitutional guarantees because he was denied the assistance of a Cantonese interpreter.

The judgment (order) appealed from is reversed.

Kingsley, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied March 2, 1977, and respondent's petition for a hearing by the Supreme Court was denied April 7, 1977.