Eddie Charles SPIVEY, Petitioner–
Appellant,

v.

Theresa ROCHA, Warden, California
State Prison, Respondent–
Appellee.

No. 98–15061.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 4, 1999 [1]

Filed Oct. 22, 1999

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See*

Federal Rules of Appellate Procedure 34(a)(2).

Ruth M. Saavedra, Deputy Attorney General, Sacramento, California, for the respondent-appellee.

Richard L. Rubin, Oakland, California, for the petitioner-appellant.

Before: PREGERSON and WIGGINS, Circuit Judges, and CARTER,[2] District Judge.

CARTER, District Judge:

Eddie Charles Spivey, a California state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition challenging his 1998 conviction for second degree murder and assault with a deadly weapon. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

## FACTS AND PRIOR PROCEEDINGS

Spivey was convicted on August 16, 1990 of assault with a deadly weapon with personal use of a firearm, and second degree murder. He was sentenced to 19 years to life. The murder victim was 16–year–old

Marcus Walker. His twin brother, Marquis, was the assault victim. Spivey's conviction has its genesis in a street altercation following a near traffic accident in the vicinity of Julian and Phelps Streets in Stockton, California.

In the early morning hours of September 16, 1989, Marcus was crossing Phelps Street when he was almost hit by a car driven by the appellant's sister Patricia Spivey. Patricia stopped and she and Marcus exchanged angry words. Patricia then drove off to find her boyfriend Greg Mitchell, and apparently told him that Marcus had slapped her. About 20 minutes later, she returned to the scene with Mitchell. They found Marquis standing alone and asked if he was the one who had hit her. He said no. Patricia told Mitchell that Marquis was not the twin they were looking for. Patricia and Mitchell then walked away from Marquis.

Patricia, without Mitchell, then drove to the home of a friend, Michelle Lord, where her brother, the appellant, had been drinking. Among those present were their cousin Romano Scott and friend Randy Johns. She told Spivey and Scott that one of the Walker twins had slapped her. She also told them that her boyfriend had already gone to look for the twin. Spivey and Scott decided to look for the twin to "just go and see what happened." "You know, why he slapped her." At Spivey's request, Johns, whose mother lived near the scene, agreed to drive Spivey and Scott to the area of Patricia's altercation with Marcus. Patricia departed on her own.

Along the way, Spivey and his friends stopped at his mothers house. Spivey went in and returned carrying two shotguns. Spivey loaded the shotguns and handed one to Scott. According to Spivey, they needed the guns for protection, because Marcus was known to carry a gun—although Spivey admitted in one of his

---

**2.** The Honorable David O. Carter, United States District Judge for the Central District of California, sitting by designation.

statements to the police that when he had seen Marcus earlier that evening Marcus had not had a gun with him. Armed, Spivey and friends continued on to Julian and Phelps.

Meanwhile, Marquis had gone off in search of Marcus, finding him at a nearby hangout drinking in the bed of a pickup truck driven by their friend John Hillman. Marquis told Marcus about his run-in with Mitchell and that Mitchell was now looking for Marcus. Marcus denied hitting Patricia Spivey. Marquis wanted Hillman to drive himself and Marcus to their mother's home, but Marcus insisted on returning to the Julian–Phelps area. Hillman dropped off the Walker twins at their relative's house on Phelps. Marquis went inside to talk with the relatives; Marcus waited on the porch. When he came back out, he found Marcus had wandered off. Marquis set out after him.

Not finding Marcus, Marquis instead ran into Mitchell, who was holding a handgun. Spivey and Scott joined Mitchell, shotguns in hand. Mitchell put his handgun to Marquis' head and ordered him to lie down; Marquis complied. Mitchell said to Marquis, "You messed with the wrong one. You shouldn't have slapped my woman." Marquis responded, "I ain't the one. That's my brother." Mitchell then asked where Marcus had gone. When Marquis pled ignorance, Mitchell fired his gun into the ground. Mitchell then asked again. When Marquis failed to answer, Spivey and Scott fired one shot each from their shotguns into the ground near Marquis' chest. Mitchell then shot Marquis in the leg. Finally, Marquis or someone on the street called out that Marcus was on a nearby street. The trio left in that direction.

Spivey and Scott separated from Mitchell to circle around the block. Hearing shots, they retraced their steps. Spivey denied seeing Mitchell actually shoot Marcus as they came around the corner. In one statement, Scott said he saw Mitchell shoot Marcus, then jump in his car and leave. He also said that Spivey had fired his shotgun in the direction of Marcus after Marcus had hit the ground. Johns had come out of his mother's house following the shots and he, Spivey and Scott then left in his car. Spivey was arrested the following day.

On August 16, 1990, Spivey was convicted of second degree murder (Cal.Penal Code, § 187) and assault with a deadly weapon (Cal.Penal Code, § 245, subd. (a)(2)). On September 30, 1992, the California Court of Appeal for the Third Appellate District affirmed the convictions. The California Supreme Court denied review on December 30, 1992. Spivey filed an application for writ of habeas corpus in San Joaquin county Superior Court, which was denied on November 22, 1994. Subsequently, Spivey filed a petition in the California Court of Appeal, Third Appellate District, which was denied on April 6, 1995. The California Supreme Court denied a petition for writ of habeas corpus on October 4, 1995. On March 18, 1996, Spivey filed a petition for habeas corpus in the United States District Court for the Eastern District of California. On September 23, 1997, Magistrate Judge Moulds filed his findings and recommendations, recommending that Spivey's petition be denied. On November 6, 1997, the district court filed an order adopting the recommendations of the magistrate and entered judgment denying Spivey's petition for habeas corpus. On December 26, 1997, the district court issued a certificate of probable cause.[3]

## STANDARD OF REVIEW

The districts court's decision to grant or deny a 28 U.S.C. § 2254 habeas

---

**3.** Because appellant's habeas petition was filed on March 18, 1996, prior to April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), the AEDPA does not apply to this case. See Lindh v. Murphy, 521 U.S. 320, 323–24, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); see also Lopez v. Thompson, 175 F.3d 1120, 1124 (9th Cir.1999).

petition is reviewed *de novo. See Schell v. Witek,* 181 F.3d 1094, 1097 (9th Cir.1999); *see also McNab v. Kok,* 170 F.3d 1246, 1247 (9th Cir.1999) (per curiam). The standard for determining whether habeas relief should be granted is whether the alleged errors " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *see also Calderon v. Coleman,* 525 U.S. 141, ─── ───, 119 S.Ct. 500, 503–04, ── L.Ed.2d ── (1998) (noting that not all constitutional errors entitle petitioner to relief; rather the "court must find that the error, in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict."). Trial errors that do not meet this test are deemed harmless. *See Eslaminia v. White,* 136 F.3d 1234, 1237 (9th Cir.1998); *see also Rice v. Wood,* 77 F.3d 1138, 1144 (9th Cir.1996) (en banc).

## DISCUSSION

### I.

■ On the third day of jury deliberations, the jury sent the following request for clarification:

> We need some clarification on the conditions that must hold for one to aid & abet. Specifically on p. 31 of the Instructions, Condition # 1, does the defendant need to have know (sic) the actual intended purpose of the perpetra-

tor or may some reasonable intent be attributed to him?

In response to an inquiry from the court, the jury indicated that it was concerned with CALJIC Nos. 3.01 and 3.02 and, in particular, subpart (1) of CALJIC No. 3.01.[4] Specifically, the jury wanted the court to clarify the knowledge of the aider and abettor regarding the perpetrator's intent as of the time the culpable aid is rendered. The following day, after several unsuccessful attempts to clarify and over defense objection, the court gave the following supplemental instruction based upon an excerpt from footnote 5 at page 12 of *People v. Croy,* 41 Cal.3d 1, 221 Cal. Rptr. 592, 710 P.2d 392 (1985):

> Now, and see if this language clarifies it to you. First, bear in mind that under CALJIC 3 point 01 requirement number one the question we're dealing with is the person aiding and abetting the commission of a crime with knowledge of the unlawful purpose of the perpetrator. So the language requirement there is unlawful purpose, not specific crime, this unlawful purpose, okay.

> Then the aider and abettor's knowledge that an act which is criminal was intended and his action taken with the intent that the act be encouraged or facilitated are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator.

> \* \* \* \* \* \*

> And that using reasonably foreseeable there (sic) expressing the same test as

---

4. Unmodified, CALJIC No. 3.01 provides:
   A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she,
   1. With knowledge of the unlawful purpose of the perpetrator and
   2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and
   3. By act or advice aids, promotes, encourages or instigates the commission of the crime.

[A person who aids and abets the [commission] [or] [attempted commission] of a crime need not be present at the scene of the crime.]
[Mere presence at the scene of a crime which does not in itself assist the commission of the crime does not amount to aiding and abetting.]
[Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.]

natural and probable consequence is. Okay.

This instruction was given at 10:55 a.m. Approximately five hours later the jury returned its verdict convicting Spivey of second degree murder and assault.

■■ It is well settled that:

In order to challenge a jury instruction on habeas, the [appellant] must prove that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The instruction must be viewed in the context of the entire trial and the jury instructions taken as a whole. *See id.* The relevant inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction" in an unconstitutional manner. *Id.* (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

*Houston v. Roe,* 177 F.3d 901, 908–909 (9th Cir.1999).

Spivey contends that the trial court's supplemental instruction, based on *Croy,* was an incorrect statement of law and allowed the jury to convict him even if they believed he did not know the specific criminal intent of Mitchell. Under *People v. Beeman,* 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984), Spivey argues, an aider and abettor "must share the specific intent of the perpetrator" and must "kno[w] the full extent of the perpetrator's criminal purpose." *Beeman,* 35 Cal.3d at 560, 199 Cal.Rptr. 60, 674 P.2d 1318. Thus, Spivey contends, the trial court misled the jury by instructing that the aider and abettor only needs to know that the perpetrator intend some "act which is criminal."

The trial court's supplemental instruction was not an incorrect statement of law. In *People v. Beardslee,* 53 Cal.3d 68, 90, 279 Cal.Rptr. 276, 286, 806 P.2d 1311

(1991) (en banc), the California Supreme Court endorsed the *Croy* court's interpretation of *Beeman* as follows:

We further explained in *People v. Croy* [citation omitted] that the "aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. **It is intent to encourage and bring about conduct that is criminal, not the specific intent that is the element of the target offense, which *Beeman* holds must be found by the jury.** (citations omitted; emphasis added)"

*Beardslee,* 53 Cal.3d at 90, 279 Cal.Rptr. 276, 806 P.2d 1311. Accordingly, the trial court's jury instruction was consistent with California law and did not otherwise violate Spivey's rights to due process and a fair trial.

## II.

■ Next, Spivey argues that it was an "improper statement of law" for the trial court to instruct the jury that he could be convicted of the murder as the natural and probable consequence of having only intended to aid and abet the commission of a misdemeanor of brandishing a firearm.

■ The trial court, at both parties request, instructed the jury with CALJIC No. 3.02, which states:

One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any criminal act that he knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated and, if so, whether

the crimes charged in Counts one and two were a natural and probable consequence of such originally contemplated crime.

According to Spivey, this instruction violated his constitutional guarantees of due process by permitting him to be convicted of second degree murder absent California's statutory requirement of malice aforethought, based upon no greater criminal intent on his part that to commit a misdemeanor brandishing. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Spivey argues that CALJIC 3.02 relieved the prosecution of its burden of proving, beyond a reasonable doubt, that Spivey had the requisite mental state to satisfy the elements of the crime of second degree murder, in particular the element of malice aforethought.

■ Under California law, malice is an essential element of second degree murder. *See Jackson v. Superior Court of City and County of San Francisco*, 62 Cal.2d 521, 42 Cal.Rptr. 838, 399 P.2d 374 (1965). Therefore, Spivey argues that liability for murder predicated on the basis that murder may be the natural and probable consequence of a simple battery conflicts with California's legislative determination that the "unlawful killing of a human being without malice ... in the commission of an unlawful act, not amounting to felony" is properly classified as manslaughter. Cal.Penal Code § 192, subd. (b).

■ Under California law, however, it is correct to instruct a jury that:

"If the natural consequences of an unlawful act be dangerous to human life, then an unintentional killing proximately caused by such act will be murder in the second degree, even though the unlawful act amounted to no more than a misde-

meanor. In such case, the malice aforethought is implied from the wanton recklessness."

*People v. Curry*, 192 Cal.App.2d 664, 674–75, 13 Cal.Rptr. 596, 602 (1961) (citing cases). Because the trial court's instruction on the natural and probable consequences doctrine was a correct statement of law, we deny Spivey's request for habeas relief on this claim.

### III.

■ The trial court's decision to exclude evidence of Marquis and Marcus's gang affiliation is not constitutional error. During his trial, Spivey sought to introduce evidence that Marcus and Marquis Walker, as well as John Hillman and Steve Reeves, were all members of the "Five Deuce Hoover Crips" gang. Marquis and Hillman were prosecution witnesses and Reeves was present with Marcus and Hillman in Hillman's pickup truck shortly prior to Marcus's death. Spivey argued that this evidence would have: (1) established Marquis and Hillman's bias and motive to lie in order to exact revenge against Spivey; (2) corroborated Spivey's testimony that he armed himself and Scott because he believed the Walker twins might be armed; and (3) supported the possibility that Marcus had been killed by a rival gang, rather than by Mitchell. Pursuant to Cal. Evid.Code § 352, the trial court excluded evidence of gang affiliation because it did not believe this evidence supported a reasonable inference that Marcus was killed by a "phantom killer" instead of by Mitchell, that there was sufficient evidence of Marquis and Hillman's bias, and the unduly prejudicial effect the evidence would have on the jury.

■ A federal habeas court cannot review questions of state evidence law. *See Henry v. Kernan*, 177 F.3d 1152, 1159 (9th Cir.1999). It is well settled that a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings

so fundamentally unfair as to violate due process. *See id.* (citing *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *and Jeffries v. Blodgett,* 5 F.3d 1180, 1192 (9th Cir.1993)).

Although evidence of a "relationship" between a witness and a party is generally admissible to show bias, *In re Wing Y,* 67 Cal.App.3d 69, 78, 136 Cal.Rptr. 390, 394 (1977), in this case, evidence of gang affiliation was not necessary to establish witness bias. The jury already knew that Marquis was Marcus's twin brother and that Hillman, in his own words, was the "best friend" of the twins. California courts have held that when other evidence of relationship has been established, then gang affiliation to establish bias is cumulative and, if prejudicial, inadmissible. *See, e.g., People v. Cardenas,* 31 Cal.3d 897, 904–905, 184 Cal.Rptr. 165, 168, 647 P.2d 569 (1982); *see also People v. Maestas,* 20 Cal.App.4th 1482, 1495, 25 Cal.Rptr.2d 644, 651 (1993); *see also People v. Munoz,* 157 Cal.App.3d 999, 1012–1013, 204 Cal.Rptr. 271 (1984). Because ample evidence of Marquis and Hillman's bias was in evidence, the trial court's refusal to admit evidence of gang affiliation did not render the state court proceeding fundamentally unfair.

■ Second, Spivey's contention that the trial court erred in prohibiting evidence of gang affiliation to bolster his assertion that he armed himself in self-defense is without merit. "Membership in an organization does not reasonably lead to any inference as to the conduct of a member on a given occasion." *In re Wing Y,* 67 Cal.App.3d at 79, 136 Cal.Rptr. 390. In other words, the tendency of members of a gang to carry weapons does not "lead reasonably to any inference as to" whether a gang member was armed on a given occasion. Thus, whether the twins were members of the Five Deuce Hoover Crips was not probative to the question of whether they were armed, and was outweighed by the prejudicial effect of admitting gang affiliation.

■ Finally, Spivey argues that evidence of Marcus's gang membership was sufficient to raise an inference that he was killed by a rival gang for gang related reasons. This argument is also without merit. Under California law, Spivey has a right to present evidence of third party culpability if it is capable of raising a reasonable doubt about his own guilt. *See People v. Hall,* 41 Cal.3d 826, 833, 226 Cal.Rptr. 112, 116, 718 P.2d 99 (1986). In order for evidence of another suspect to be admissible, however, "there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." *Id.* Motive or opportunity is not enough. *Id.* In this case, Spivey had no evidence of another person's actual motive to murder Marcus. Instead, Spivey sought to introduce evidence of Marcus's gang affiliation to "raise an inference that an unknown party (such as [a] Blood gang rival) may have shot Marcus for gang related reasons." This evidence is purely speculative. It does not identify a possible suspect or link any third party to the murder, or establish an actual motive rather than a possible or potential motive. Hence, the trial court's ruling that the evidence of gang affiliation was inadmissible did not render Spivey's trial fundamentally unfair.

### IV.

■ Inconsistent testimony was given during Spivey's trial and at Mitchell's subsequent trial.[5] Spivey contends that his convictions should be reversed because the inconsistent evidence proves that false testimony was introduced at his trial. Specifically, Spivey points to discrepancies in the testimony given by William Ellington and Scott. At Spivey's trial, Ellington testified

---

**5.** Mitchell was tried nearly two and one-half years after Spivey. He was convicted of first degree murder and assault with a firearm.

that he was with Marcus shortly before he was shot and that Marcus was not armed on the day he was killed. At Mitchell's trial, however, Ellington testified that he did see Marcus carrying a handgun that day. Likewise, Scott testified at Mitchell's trial that he noticed a gun in Marquis' waistband just before Marquis was forced down to the ground by Mitchell. Scott did not disclose this fact at Spivey's trial. Further, Spivey contends that the testimony of Ellington and Scott—both Marcus and Marquis were armed on the evening of the shooting—indicates that Marquis testified falsely at Spivey's trial in stating that neither he nor his brother were armed that night. Thus, Spivey argues that the testimony that the twins were armed the day of the shooting would have provided critical support for his defense at trial.

■ A conviction based on false evidence warrants a new trial "if there is a reasonable probability that [without the evidence] the result of the proceeding would have been different." *United States v. Young,* 17 F.3d 1201, 1203–1204 (9th Cir.1994) (citing *United States v. Endicott,* 869 F.2d 452, 454 (9th Cir.1989)).

Whether the Walker twins were in fact armed is irrelevant to Spivey's intent to commit a crime that night. What is relevant to Spivey's intent is that in spite of his belief that the Walker twins were armed he still set out to confront them. Therefore, the fact that Marquis, Scott, and Ellington had lied about whether the twins were armed on the day of the shooting, does not establish a reasonable probability that the result would have been different. As the district court noted, "there is nothing about this testimony that makes [Spivey's] actions more reasonable or the consequences less foreseeable."

## V.

■ Similarly, Spivey contends that the evidence adduced at Mitchell's trial that the Walker twins were armed on the day of the shooting, and that there had

been false testimony on this issue at Spivey's trial, also constitutes new evidence for purposes of Spivey's claim for habeas relief. Additionally, Spivey points to the testimony of Mitchell, who testified on his own behalf at his trial. Mitchell testified that shortly after shooting Marquis, Marcus approached him brandishing a handgun demanding that he take him to where Marquis was. Mitchell then shot and killed Marcus in the ensuing altercation. Lastly, Spivey contends that Ellington's testimony that Marcus said, "I'm ready to die," when he returned to where Mitchell was looking for him, supports that "Marcus voluntarily encountered Mitchell with a mind toward engaging in armed combat." Spivey argues that if the jury had heard this evidence, they could have concluded that the chain of causation was broken between his actions and the death of Marcus.

■ Newly discovered evidence is a ground for habeas relief only when it bears on the constitutionality of an appellant's conviction and would probably produce an acquittal. *See Swan v. Peterson,* 6 F.3d 1373, 1384 (9th Cir.1993) (citing *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993)). Contrary to Spivey's claims, the totality of the new evidence does not undermine the structure of the prosecution's case. As noted in the preceding section, whether the Walker twins were armed on the day of the shooting has little probative value on the issue of Spivey's intent to commit the crimes. Moreover, Marcus's alleged statement "I'm ready to die," does not make it more probable that Mitchell killed in self-defense. This is even more apparent in light of the jury's disbelief of Mitchell's testimony in his murder trial. Accordingly, Spivey is not entitled to a new trial on the grounds of newly discovered evidence.

## CONCLUSION

For the foregoing reasons, the district court's denial of Spivey's petition for a writ of habeas corpus as to his conviction for

second degree murder and assault with a deadly weapon is **AFFIRMED.**