CUÉLLAR, J.,
Concurring and Dissenting. — By their very nature, capital appeals raise issues that our court has no choice but to address. After closely considering defendant’s conviction for aiding and abetting the attempted murder of Tony Nguyen, I do not believe that conviction can stand. Accordingly, I respectfully dissent from that portion of the court’s opinion.
To be guilty of aiding and abetting, a defendant must, “ ‘by act or advice,’ ” aid, promote, encourage, or instigate the commission of a crime. (People v. Marshall (1997) 15 Cal.4th 1, 40 [61 Cal.Rptr.2d 84, 931 P.2d 262].) The defendant must act both with knowledge of the principal’s unlawful purpose and with “ ‘the intent or purpose of committing, encouraging, or facilitating the commission of the offense.’ ” (Ibid.) In the case of aiding and abetting the offense of attempted murder, the defendant must specifically intend to kill. (People v. Lee (2003) 31 Cal.4th 613, 624 [3 Cal.Rptr.3d 402, 74 P.3d 176] [“[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator’s intent to kill and with the purpose of facilitating the direct perpetrator’s accomplishment of the intended killing — which means that the person guilty of attempted murder as an aider and abettor must intend to kill.”]; People v. Beeman (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318] [“When the definition of the offense includes the intent to do some act or achieve some consequence beyond the actus reus of the crime [citation], the aider and abettor must share the specific intent of the perpetrator.”].) Although presence at the scene of the crime is one relevant factor a jury may consider in determining whether a defendant is guilty of aiding and abetting, presence alone is insufficient to sustain a conviction. (See, e.g., People v. Durham (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; People v. Villa (1957) 156 Cal.App.2d 128, 133-134 [318 P.2d 828].) Neither is it sufficient for a defendant, subsequent to the perpetration of the offense, to desire that the victim die; the intent to aid in the offense “must be formed prior to or during ‘commission’ of that offense.” (People v. Cooper (1991) 53 Cal.3d 1158, 1164 [282 Cal.Rptr. 450, 811 P.2d 742] (Cooper).)
The evidence of what took place at the time Tony Nguyen was shot is extraordinarily thin. As the majority recounts, defendant was seated in the back of a car driven by My Tran. Nghia Phan sat in the front passenger seat. At some point, the car began to follow a car driven by Tony Nguyen and occupied by several other members of the Cheap Boys gang. Tran’s car passed Tony’s car, and Vinh Kevin Lac, one of the occupants of Tony’s car, testified that defendant stared back at Tony’s car as the two cars passed. Tran’s car then pulled into the parking lot of a fast food restaurant, idled *1094 there until Tony’s car passed by, and then pulled out of the lot to follow Tony’s car. The two cars stopped next to each other at a red light. When the signal turned green, Phan shot Tony in the neck before Tran’s car pulled away. Several days after the shooting, defendant visited Lac’s apartment and asked, “What’s up with the cops?”
Had the prosecution been limited to the evidence described above, we would undoubtedly conclude that there was insufficient evidence to convict defendant of aiding and abetting attempted murder. The evidence specific to Tony Nguyen’s shooting showed that defendant was present in the car from which Tony was shot, that defendant was accompanied by fellow gang members, and that defendant “stared” at Tony’s car prior to the shooting. While the car’s driver arguably “stalked” Tony’s car prior to the shooting, defendant was not the driver and no other evidence demonstrated that defendant was complicit in or even aware of the nature of the car’s maneuvers immediately before the shooting. And while defendant spoke to Lac several days after the shooting to ask, “What’s up with the cops?,” the interaction fails to elucidate defendant’s knowledge of or intent to aid in the commission of the shooting when it occurred. (See Cooper, supra, 53 Cal.3d at p. 1164.)
So the incident-specific evidence above sheds minimal light on what action, if any, defendant took to aid, promote, encourage, or instigate Tony Nguyen’s shooting. It sheds even less light on whether defendant specifically intended Tony’s death. Indeed, I do not understand the majority to contend that defendant’s conviction for aiding and abetting the attempted murder of Tony Nguyen can be sustained based solely on the evidence specific to the shooting itself.
With so little evidence specific to the Tony Nguyen shooting supporting defendant’s conviction for attempted murder, the prosecution was left to rely on Detective Mark Nye’s gang expert testimony. This is problematic given the limits of what little can be gleaned from it. Nye’s testimony was remarkably broad, and almost none of it pertained specifically to defendant, the Nip Family, or even Vietnamese gangs. In fact, Nye’s sole discussion of either defendant or the Nip Family was limited to a brief confirmation that he was familiar with defendant and believed him to be a member of the Nip Family, a similarly brief account of the origins of the Nip Family (which was an outgrowth of another Vietnamese gang, the Natoma Boys), and an opinion that the Nip Family was in a war with the Cheap Boys at the time of the shootings in this case.[1]
*1095 Rather than focusing on any facts specific to defendant or even the Nip Family, Nye testified about the culture and behavioral patterns of “Asian” gangs in general. Nye contrasted Asian gangs with Hispanic ones, at one point concluding that Asian gangs are “a lot more intelligent, more sophisticated” than their Hispanic counterparts. Nye also testified that, relative to “turf-oriented” Hispanic gangs that “prey upon people that live in their community,” Asian gangs’ “way of doing business” is to get “involved in street warfare wherever they happen to be at that particular time.” The assertion that Asian gang members are ready, willing, and able to violently confront rival gang members in any place at any moment turned out to be a theme in Nye’s testimony. He opined: “If they encounter their rivals, they’re going to have a shooting right there. They’re going to have gang warfare right there on the streets.” Later on, Nye responded affirmatively when asked whether members of two Asian gangs that had reached a stage of gang warfare “would be trying to kill whoever was in the other gang” whenever there was an opportunity. Nye also claimed that “as part of their very culture, [Asian gangs are] expecting a battle to occur at any time.”
Adding to this picture of Asian gangs as being prepared to engage in violent confrontation everywhere at all times was Nye’s repeated assertion that Asian gangs “hunt” their rivals. According to Nye, every time multiple Asian gang members go out together, “they actively look for rival gang members.” Nye testified that the gangs “are extremely mobile and they go from place to place around the community hunting for their rivals.” “Every time they go in the car, they’re ready for engagement with another gang. They’re ready and they anticipate confronting rivals.”
Finally, Nye portrayed Asian gangs as highly cohesive groups in which each and every member has a clear understanding of and commitment to the rules and goals of the gang. Characterizing an Asian gang as “an octopus with many legs,” Nye opined that the rules of gang membership require each gang member to act as “backup” for his fellow gang members during a confrontation. Thus, a gang member who was merely present in a car during a shooting could be acting as backup, because “[i]f something were to happen and they would have to bail out of the car, that member would be expected to back that person up. Be it assault somebody, be it shoot somebody, be it take over the driving of the vehicle, whatever it may be. He is going to be expected to back up the individuals.” Nye testified that the gang members “act[] in concert as a group,” during confrontations with rival gangs, and that even an individual who does not personally shoot during these confrontations acts as backup because he is “expected to do everything that [the shooter] is going to do,” and “needs to be just as aggressive as the other person.”
*1096 The effect of Nye’s testimony was to paint a static picture of Asian gang members — and, by implication, defendant — as always and everywhere actively seeking violent confrontation. This picture, which contained no allowance for variation among individuals’ intentions or motivations, or ebbs and flows in a gang’s appetite for violence, was overbroad and simplistic on its face. And ironically, it was actually contradicted by some of the evidence specific to the Tony Nguyen shooting. Nye’s repeated, unqualified claim that rival gang members engaged in a gang war would violently attack one another at any opportunity, stands in stark contrast to Kevin Lac’s acknowledgement that he lived in the same apartment building as defendant and had “bumped into him, kind of, you know, five, six times.” On none of these occasions did the interaction result in violence, in spite of the fact that defendant was aware that Lac belonged to the Cheap Boys. Moreover, defendant was apparently able to put aside his violent intentions long enough to peacefully ask Lac, “What’s up with the cops?” following the Tony Nguyen shooting. Such inconsistencies between Nye’s testimony and the facts surrounding the Tony Nguyen shooting did not necessarily render Nye’s testimony inadmissible, but previous cases have found that gang expert testimony is of limited probative value when it is contradicted by the facts of the case. (E.g., People v. Rios (2013) 222 Cal.App.4th 542, 574 [165 Cal.Rptr.3d 687] [gang expert’s testimony that possession of a stolen vehicle could further or assist a gang’s criminal activities because a stolen vehicle could be used to evade law enforcement or commit drive-by shootings was insufficient to sustain gang enhancement under Pen. Code, § 186.22, subd. (b), when there was no evidence that defendant used the stolen vehicle for any of these purposes]; In re Daniel C. (2011) 195 Cal.App.4th 1350, 1363-1364 [125 Cal.Rptr.3d 337] [gang expert’s testimony was insufficient to sustain conviction when the “underlying premise” of the expert’s opinion was “factually incorrect”].)
Contradictions aside, the probative value of Nye’s testimony was undercut further by its generality. Not only did Nye’s testimony include very little evidence about the Nip Family in particular, but Nye’s broad observations about the general culture of Asian gangs does not, in and of itself, prove what defendant’s actions and intentions were with respect to any given incident. (See People v. Samaniego (2009) 172 Cal.App.4th 1148, 1179 [91 Cal.Rptr.3d 874] [while an opinion about gang members’ knowledge of their associates’ intentions “may generally be true regarding gang culture, it is still speculative in its application to the specific conduct of gang members in a particular case”].) No human being acts in all instances as even a carefully drawn portrait of his cultural affiliation would predict. Nor is it safe simply to assume that even the most fiercely loyal adherents of a group share that association’s goals or intentions at all times. To conclude otherwise, and thus find a defendant guilty based almost entirely on the assumption that he must *1097 have been acting in accord with his group’s rules and culture on any particular occasion, effectively punishes a defendant based on the mere fact of gang membership — something clearly disallowed. (See People v. Guillen (2014) 227 Cal.App.4th 934, 992 [174 Cal.Rptr.3d 703] [“[G]ang evidence standing alone cannot prove a defendant is an aider and abettor to a crime.”]; U.S. v. Garcia (9th Cir. 1998) 151 F.3d 1243, 1246 [“[E]vidence of gang membership cannot itself prove that an individual has entered a criminal agreement to attack members of rival gangs.”]; In re Wing Y. (1977) 67 Cal.App.3d 69, 79 [136 Cal.Rptr. 390] [defendant’s gang membership is inadmissible when it serves no evidentiary function other than to allow “unreasonable inferences . . . that [defendant] [is] guilty of the offense charged on the theory of ‘guilt by association’ ”]; cf. People v. Rodriguez (2012) 55 Cal.4th 1125, 1130 [150 Cal.Rptr.3d 533, 290 P.3d 1143] [“Mere active and knowing participation in a criminal street gang is not a crime.”].) It is true that many gang members indeed commit violent or other serious criminal offenses, and such activity is subject to severe punishment under our criminal statutes. (See Pen. Code, § 186.22, subd. (b).) But we remain responsible for determining whether any given conviction of a gang member is in accordance with the law and supported by the kind of evidence allowing a fact finder to reasonably conclude that the defendant is guilty.
While Nye’s testimony was at least somewhat relevant as evidence of defendant’s aiding and abetting liability for the Tony Nguyen shooting and thus allowed as a matter of evidence law, it could not, as the majority concedes, serve as the sole evidence of guilt. But neither, in my view, was Nye’s testimony adequate to bridge the considerable evidentiary gaps left by the thin evidence of defendant’s role in the Tony Nguyen shooting. While Nye testified as to multiple concrete, specific actions a gang member might take to “back up” a fellow gang member in a confrontation — such as serving as the getaway driver, assaulting rival gang members, or taking over for the shooter — there is no evidence that defendant did or intended to do any of those things. Instead, the only evidence of defendant’s specific actions at the time of the shooting was that he “stared” at the Cheap Boys’ car prior to the shooting. This indeterminate gesture was conceivably an example of defendant identifying the occupants of the car or attempting to intimidate them— both activities that Nye mentioned as examples of gang members acting as backup for one another — but it is at best equally consistent with a myriad of other inferences that would find such an action either innocent or inadvertent. To believe the fact finder could infer from this stare that defendant, beyond any reasonable doubt, aided Tony’s shooting and intended his death is too great a leap for me to support.
And it remains too great a leap for me despite an admittedly demanding standard of review governing challenges to the sufficiency of the evidence. A reviewing court must view “the whole record in the light most favorable to *1098 the judgment” to determine whether it contains sufficient evidence “such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.” (People v. Johnson (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]; see Jackson v. Virginia (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781] [“[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”].) But our strong presumption in favor of upholding factual determinations where reasonably possible in no way vitiates our responsibility to ensure that evidence sustaining a conviction is “ ‘ “credible and of solid value,” ’ ” (People v. Hill (1998) 17 Cal.4th 800, 848 [72 Cal.Rptr.2d 656, 952 P.2d 673]), and that inferences supporting a conviction are “of such substantiality that a reasonable trier of fact could determine beyond a reasonable doubt” that the inferred facts are true (People v. Raley (1992) 2 Cal.4th 870, 891 [8 Cal.Rptr.2d 678, 830 P.2d 712]). This case is replete with examples of criminal convictions supported by evidence meeting this standard, including defendant’s conviction on two counts of murder and multiple counts of attempted premeditated murder, as well as active participation in the illicit activities of a criminal street gang. Not so with the evidence surrounding the Tony Nguyen shooting. On this count, the evidence most directly relevant was manifestly insufficient, on its own, to support defendant’s conviction, while Nye’s testimony — at least as it related to this count — was neither “credible” nor “of solid value” and thus could not substantially support the inference that defendant aided and abetted the attempted murder.
Which is why I respectfully dissent from the court’s judgment upholding defendant’s conviction for the attempted murder of Tony Nguyen. In all other respects, I join the court’s opinion.
Appellant’s petition for a rehearing was denied October 14, 2015.

 Nye also recounted his role in securing defendant’s arrest.